OPINION OF THE COURT
Lee L. Holzman, J.
In this proceeding for the adoption of Michael by his mother’s husband, the jurisdictional issue presented is whether *974 any attempt must be made to find and notify the sperm donor whose specimen was used to artificially inseminate Michael’s mother. The donor’s identity is presently unknown to all but the medical facility which performed the procedure. The agreement between the sperm donor and the medical laboratory which performed the procedure contains the following provisions: the donor’s identity would not be revealed except upon his written consent; the donor consented to the use of the samples for research or artificial insemination; the donor waived "any rights to offspring of artificial insemination”; and the donor agreed not to "attempt to discover the identity of persons who receive the specimen”. Michael’s mother was not married either when the procedure was performed or when he was born on January 8, 1993. She married petitioner on June 18, 1994.
The statutory provisions in New York discussing artificial insemination deal with either surrogate parenting contracts (Domestic Relations Law §§ 121-124) or the legitimacy of children conceived in this manner by married women (Domestic Relations Law § 73). Section 73 provides that a child "born to a married woman by means of artificial insemination performed by persons duly authorized to practice medicine” is the legitimate child of both spouses where they both execute a written consent in the form required therein. Justice Silbermann (Anonymous v Anonymous, NYLJ, June 17, 1988, at 28, col 1, mod on other grounds 151 AD2d 330) and Professor Scheinkman (1991 Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law § 73, at 53) both noted that compliance with the statutory provisions makes the husband the father of the child and by necessary implication terminates the sperm donor’s right to claim paternity without notice to him.
Inasmuch as Michael’s mother was not married at the time of the procedure, it would appear at first blush that the provisions of the Domestic Relations Law concerning the legitimacy of a child born to a "married” woman by artificial insemination would not be applicable. Nevertheless, where a man donates his sperm to a medical facility to be used for the purpose of artificial insemination, and all parties agree from the outset that they are forever to remain anonymous from each other, there is no reason why the forfeiture of the man’s parental rights without further notice should depend upon "the luck of the draw” because his sperm was utilized to impregnate a married woman instead of one who was not. Even *975 though surrogate parenting contracts are against the public policy of this State (Domestic Relations Law § 122), artificial insemination is not (see, Domestic Relations Law § 73). Nor is the court aware of any distinction, based upon marital status, being mandated by law with regard to a woman’s right to be artificially inseminated. It might very well be unconstitutional for the law to try to make such a distinction (Matter of Jacob, 86 NY2d 651). Therefore, the unknown donor in this case, as would be the case if Michael’s mother had been married at the time of the procedure, has forfeited any parental rights.
Accordingly, notice is not required to be given to the unknown donor, and the matter is referred to the Adoption Clerk for such further proceedings as are needed to complete the application.