1999 ME 148

**April L. WHITE et al.**

**v.**

**FLEET BANK OF MAINE.**

Supreme Judicial Court of Maine.

Argued Sept. 7, 1999.

Decided Oct. 25, 1999.

Leigh McCarthy, (orally), Rudman & Winchell, Bangor, for the appellant.

Elliott L. Epstein, (orally), Raymond Laurier, Isaacson & Raymond, Lewiston, for the appellee.

Terry Snow, Cumberland Center, for Gardian Ad Litem.

Before WATHEN, C.J., and CLIFFORD, ALEXANDER, and CALKINS, JJ.

ALEXANDER, J.

[¶ 1] This matter is before the Court on report, pursuant to M.R. Prob. P. 72[1] from the Cumberland County Probate Court (*W.Childs, J.*) to review a decision of that Court (*D.Childs, J.*) regarding applicability of the rule against perpetuities and the rule against accumulations to the Robert C. Moore Testamentary Trust.

[¶ 2] A report pursuant to Rule 72 is an exception to the final judgment rule[2] which we have said "should be used spar-

---

1. M.R. Prob. P. 72 incorporates M.R. Civ. P. 72. If the report is contested, as it is here, a report from the court is made pursuant to M.R. Civ. P. 72(c) which states:

    (c) Report of Interlocutory Rulings. If the court is of the·opinion that a question of law involved in an interlocutory order or ruling made by it in any action in the Superior Court ought to be determined by the Law Court before any further proceedings are taken therein, it may on motion of the aggrieved party report the case to the Law Court for that purpose and stay all further proceedings except such as are necessary to preserve the rights of the parties without making any decision therein.

2. The "final judgment rule" is not specifically articulated in the Rules of Civil Procedure, but is developed from case law, *see Andrews v. Department of Envtl. Protection,* 1998 ME 198, ¶¶ 3–5, 716 A.2d 212, 215–215; *Porrazzo v. Karofsky,* 1998 ME 182, ¶¶ 5–7, 714 A.2d 826, 827–828. In the Civil Rules "Judgment" is defined to include: "a decree and any order from which an appeal lies." M.R. Civ. P. 54A. M.R. Civ. P. 73(a) then addresses appeal of a judgment which "is by law· reviewable by the Law Court." The term "final judgment" is referenced, without being further defined, in Rule 54(b).

ingly." *Luhr v. Bickford,* 661 A.2d 1141, 1142 (Me.1995) (citations omitted).

[¶ 3] We recently reviewed the issues we consider in evaluating whether to decide the merits of a case that comes before us under Rule 72(c) where the propriety of the report is contested.

> Although the trial court makes a preliminary determination of the propriety of its report, we retain "the power to make our own independent determination whether in all circumstances of a given case our decision on a report would be consistent with our basic function as an appellate court and we would not be cast in the role of an advisory board." In making that determination, we assess whether the question of law reported is "of sufficient importance and doubt to outweigh the policy against piecemeal litigation." We also consider whether "a question raised on report might not have reached the Law Court in the normal course of the appellate process"—that is, whether the issue might not have to be decided at all because of other possible dispositions. Although Rule 72(c) does not require us to do so, we may take into account whether "our decision will in at least one alternative dispose of the action...." Finally, in the interests of the judicial economy and the preservation of our appellate function, we must consider whether our involvement in a case prior to the entry of a final judgment will encourage piecemeal litigation in cases involving similar circumstances.

*Morris v. Sloan,* 1997 ME 179, ¶ 7, 698 A.2d 1038, 1041 (citations omitted).

[¶ 4] We conclude that the report was appropriately granted. The issues presented are of critical importance in drafting estates and trusts. Our ruling, in either alternative, will likely resolve the litigation. Finally, the central issue on this appeal, the question of applicability of the rule against accumulations, is a matter of significant uncertainty which

has not been addressed directly by this Court since 1865, before adoption of the predecessor of 33 M.R.S.A. § 101 (1988), the so-called "wait and see" statute applied to the rule against perpetuities.

## I.  CASE HISTORY

[¶ 5] Robert C. Moore died October 3, 1970, leaving a handwritten will[3] dated January 27, 1947. The will was offered for probate on October 23, 1970, and allowed to probate on November 25, 1970. Moore's will left the residuary portion of his estate to be placed in trust. The section of the will establishing the trust stated:

> Fifth—All my stocks, bonds, securities, and monies, not covered above; and any accruing to my estate: I wish to be placed in Trust, in the custody of a suitable Bank or Trust Company.
>
> The income from the above Trust, I wish divided in four equal parts:
>
> Part One—to be reinvested annually for the increase of funds in the Trust.
>
> Part Two—to be paid quarterly to Elizabeth, my wife.
>
> Part Three—to be paid quarterly to Rachel, my daughter.
>
> Part Four—to be paid quarterly to the direct descendants of my daughter Constance Parlin Tancredi:
>
> > One half to Robert John Tancredi, my grandson, and
> >
> > One half to Nancy Rose Tancredi, my granddaughter.
>
> Sixth—I wish that only the direct descendants of my wife Elizabeth, and of myself, besides Elizabeth herself, shall share in the bequests of my estate, or in the income from the Trust:
>
> A.   When my wife Elizabeth dies, her share of the income of the trust is to be divided equally between Part Three and Part Four, above.

---

3.   In probate practice, a handwritten will is    called a "holographic" will.

B. When my daughter Rachel dies, her share in the income of the trust goes to her direct descendants.

C. When one of the Tancredi children dies, that share of Part Four passes either to his or her direct descendants or to the other Tancredi child, if there are no direct descendants.

D. And so on, following the lines of direct descent, as long as the Trust may be made to endure.

[¶ 6] Rather than taking pursuant to the will and receiving the benefit of the trust income, Mr. Moore's widow, Elizabeth, elected to claim her elective share as permitted by law.[4] As a result of this election, Rachel and the two children of Constance Tancredi succeeded to Elizabeth's twenty-five percent interest in the trust income, with Rachel entitled to receive three-eighths of the trust income, and the two children, Robert and Nancy, each entitled to an equal share of a three-eighths interest in the trust income.

[¶ 7] In 1971, the Somerset County Probate Court (*Davis, J.*) recognized the trust as valid and appointed the Federal Trust Company of Waterville, Maine, to serve as trustee. Through a series of mergers,[5] Fleet Bank of Maine has become the trustee of the Robert C. Moore Testamentary Trust.

[¶ 8] On April 21, 1998, alleging that the trust was invalid as violative of both the rule against perpetuities and the rule against accumulations, the petitioners—the living heirs to Mr. Moore's estate—filed a petition with the Cumberland County Probate Court to order the distribution of the trust corpus. They argued that the construction of the trust provisions rendered it void *ab initio*, and that they were entitled to the trust corpus in accordance with the percentage of the income they had been receiving from the trust, i.e., twenty-five percent to Robert J. Tancredi, twenty-five percent to Nancy Tancredi, and fifty percent to the Estate of Rachel Lopez. Although the petitioners demonstrated that they had entered a contractual agreement with all of the living heirs agreeing to support the petition for distribution, the court appointed a guardian ad litem to protect the rights of any potential unborn heirs.[6]

[¶ 9] On December 31, 1998, the Cumberland County Probate Court (*D. Childs, J.*) entered an order stating that the trust did not violate the rule against perpetuities, but that the provision requiring twenty-five percent of the income to be reinvested in the trust corpus violated the rule against accumulations. Accordingly, the court ordered Fleet Bank to render an accounting of the income accumulated in the trust from its inception and then, on approval of the court, to distribute the funds to the beneficiaries. In response to this order, Fleet requested report of the issue to this Court to determine the necessity for and scope of the accounting, if any. Following a hearing, the court (*W. Childs, J.*)[7] granted the motion and ordered the issue reported on March 1, 1999. On March 15, 1999, the court (*W. Childs, J.*) issued a separate order making supplementary findings.

---

4. Under former 18 M.R.S.A. § 1057 (1964 & 1965 Supp.) now recodified as 18–A M.R.S.A. § 2–201(a) (1998), a surviving spouse could elect to take a ⅓ share of the estate in lieu of any distribution under a will. *Old Colony Trust Co. v. McGowan*, 156 Me. 138, 141–45, 163 A.2d 538, 540–42 (1960), *Given v. Curtis*, 133 Me. 385, 386, 178 A. 616, 616 (1935).

5. In 1984, the Federal Trust Company of Waterville merged with the Merrill Trust Company; in 1988, the Merrill Trust Company merged with Norstar Bank of Maine and the two entities assumed the name Fleet Bank of Maine.

6. Appointment of a guardian ad litem is governed by M.R. Prob. P. 17(b) which incorporates M.R. Civ. P. 17(b).

7. Judge William Childs had succeeded Judge Dana Childs as Judge of the Cumberland County Probate Court. *See* M.R. Prob. P. 63 and M.R. Civ. P. 63.

## II. RULE AGAINST PERPETUITIES

■ [¶ 10] Maine follows the traditional common law rule against perpetuities that, "no interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest." *Newick v. Mason*, 581 A.2d 1269, 1272 (1990). We have stated the proper rule of application, with respect to the rule against perpetuities, is as follows:

> The rule against perpetuities is not a rule of construction, but a peremptory command of the law. It is not, like a rule of construction, a test, more or less artificial, to determine intention. Therefore, every provision in a will or settlement is to be construed as if the rule did not exist, and then to the provision so construed the rule is to be remorselessly applied.

GRAY ON PERPETUITIES § 629 (4th ed.1942), (identical language from the first edition was quoted in *Andrews v. Lincoln*, 95 Me. 541, 544, 50 A. 898, 899 (1901)).

[¶ 11] The common law rule is modified, however, by Maine's "wait and see" statute, that provides:

> In applying the Rule Against Perpetuities to an interest in real or personal property limited to take effect at or after the termination of one or more life estates in, or lives of, persons in being when the period of said rule commences to run, the validity of the interest shall be determined on the basis of facts existing at the termination of such one or more life estates or lives.

33 M.R.S.A. § 101 (1988).[8]

[¶ 12] While the common law rule remains intact, the consequence of the application of the "wait and see" statute is that the interests created by the trust are not tested based on what might have happened from the outset of the trust, but rather on the facts as they have actually occurred on the termination of one or more life estates

or lives. Thus, the court will look at the facts as they are when the life or life estate terminates to determine whether the succeeding estate will, in fact, vest within the appropriate period.

[¶ 13] The first issue is whether the Moore Trust created interests that violate the rule against perpetuities. The parties debate the meaning of the ambiguous language of the trust that states Mr. Moore's intent that the trust shall last, "following the lines of direct descent, as long as the Trust may be made to endure." Petitioners argue that this clause indicates an intent to extend the life of the trust until there are no more descendants to whom the right to income may pass. Fleet argues that this clause indicates an intent that the trust shall endure only so long as interests in the trust income are legal.

■ [¶ 14] To determine the testator's intent, we must consider the particular language used in light of the instrument taken as a whole. *See Estate of Worthley*, 535 A.2d 433, 435 (Me.1988). Where a will may be subject to one construction that will violate the rule against perpetuities and one that will not, we will adopt the construction that does not offend the rule. *See Singhi v. Dean*, 119 Me. 287, 289, 110 A. 865, 866 (1920); *Towle v. Doe*, 97 Me. 427, 432, 54 A. 1072, 1075 (1903).

■ [¶ 15] Mr. Moore's requirement that twenty-five percent of the income be used to fortify the trust corpus removes the likelihood that he believed the trust would eventually fail for want of assets to support it. The will states that the right to income is to pass, "following the lines of direct descent, as long as the *Trust* may be made to endure." (Emphasis added.) This clause appears to refer to the legal endurance of the trust. As such, it serves to save the trust from violating the common law rule. *See Fitchie v. Brown*, 211 U.S. 321, 29 S.Ct. 106, 53 L.Ed. 202 (1908)

---

8. Mr. Moore died in 1970. Accordingly, the Moore Trust is subject to the "wait and see" statute as the statute applies to wills where the testator dies after August 20, 1955. 33 M.R.S.A. § 106 (1988).

(finding savings clause stating an intent that the testamentary trust for "as long a period as is legally possible" sufficient).

■ [¶ 16] Alternatively, petitioners assert that when the construction of the trust is such that it will ultimately fail at some point in the future, i.e., the right to a share in the income will eventually vest in a direct descendant at a point beyond the perpetuities period, the trust is void *ab initio*. However, the rule against perpetuities voids only those interests vesting beyond the perpetuities period. The remaining valid interests take effect. *See* W. Barton Leach, *Perpetuities In A Nutshell*, 51 HARV. L. REV. 638, 656 (1938). The failure of the third in a series of interests, for example, does not invalidate the second so long as the court does not determine that the invalid interest is so central to the settlor's intent as to essentially defeat the intended scheme. *See id.*

[¶ 17] Here, the language of the trust's savings clause demonstrates awareness that the trust would eventually be incapable of validly passing to the next lineal descendant. Thus, the eventual vesting of an interest too remote to satisfy the rule does not defeat settlor's intent with re-

spect to the valid intervening interests in the right to trust income. In accordance with Maine's "wait and see" statute, those interests could pass through several generations before an invalid interest arises.

■ [¶ 18] The petitioners also assert that Maine's "wait and see" statute does not save the Moore Trust because the trust will ultimately fail of its purpose when it vests too remotely in one of Mr. Moore's direct descendants. To support this argument, they rely on Section 1.4, cmt. f, of the RESTATEMENT (SECOND) OF PROPERTY.[9] This section of the Restatement, states that the "wait and see" doctrine will be applied unless the interest cannot, in any circumstance, vest within the appropriate period.[10]

[¶ 19] The future interests contemplated by Mr. Moore do have the ability to vest within 21 years of the death of the last life in being. In fact, on the death of the last life in being, the right to enjoyment of the income will vest immediately in the next lineal descendant.[11] This right to enjoy income could pass to and vest in the next lineal descendant one or more times during the twenty-one year period after the death of the last life in being.[12] Accord-

---

9. Comment f of Section 1.4 states in pertinent part as follows:

> The rule against perpetuities adopted by this section, however, is that what-does-happen approach, usually referred to as the wait-and-see approach, under which it is not possible to determine whether an interest fails under the rule against perpetuities *as of the date the period of the rule begins to run*, unless on such date it is impossible under all circumstances for the interest to vest in time. . . .

RESTATEMENT (SECOND) OF PROPERTY § 1.4 cmt. f (1981).

10. When analyzing interests that are subject to the "wait and see" doctrine, it is important to consider that the doctrine's purpose is "to grant interests that would have been invalid under the common law rule a reasonable chance to be valid." *See* Lawrence W. Waggoner, *Perpetuities: A Perspective On Wait-And-See*, 85 COLUM. L. REV. 1714, 1717 (1985). Pursuant to the "wait and see" doctrine, interests become invalid "only if they still re-

main in existence and contingent" beyond twenty-one years after the last life in being. *See id.*

11. The rule against perpetuities concerns itself only with the vesting, or commencing, of estates, and not at all with their termination. *See Andrews v. Lincoln*, 95 Me. 541, 545, 50 A. 898, 900 (1901). Therefore, the right to income may timely vest in a nonlife in being beneficiary and run well beyond 21 years after the death of the last life in being. Only on the death of the nonlife in being whose interest runs beyond the perpetuities period will the succeeding interest fail.

12. To illustrate this point, consider a validating scenario that is as unlikely as many of the scenarios one is forced to consider when applying the common law rule. For example, suppose the last life in being were to die today. The next lineal descendant, A, would succeed to the right to income immediately on that death. Assume that A is ninety years old, and has issue as follows: one son, B, who

ingly, the "wait and see" statute does apply to the Moore Trust, and the validity of the future interests created therein must be measured at that date in the future when the last life in being dies.[13]

■ [¶ 20] Petitioners suggest that the trust is void because Mr. Moore failed to provide for the ultimate disbursement of the trust corpus. However, where an express trust fails, either at the outset or subsequently, and the settlor has not indicated what the disposition of the trust corpus should be, the trustee shall hold the property on a resulting trust for the settlor. *See* AUSTIN WAKEMAN SCOTT, SCOTT ON TRUSTS § 411 (4th ed.1989). In Maine, on the failure of a trust, where the property cannot be returned to the settlor because he is deceased, the trustee holds a resulting trust for the residuary beneficiaries of the settlor's will or his next of kin. *See Haskell v. Staples*, 116 Me. 103, 106, 100 A. 148, 149 (1917). As Mr. Moore made no provisions for the residue of his estate, other than the creation of the trust itself, the will is incapable of disposing of this property when the trust fails, and the principal will pass according to the rules of intestacy.

## III. RULE AGAINST ACCUMULATIONS

[¶ 21] In *Kimball v. Crocker*, 53 Me. 263, 272–273 (1865), we last addressed directly a trust accumulation clause that allowed accumulation of annual income to the trust without specific limitation and thus for longer than the twenty-one years of the then governing rule against perpetuities. There we held:

> When the accumulation is for a gross number of years, the rule against perpetuities prohibits more than twenty-one years. Whenever lives in being do not form part of the time of suspension or postponement, the only period under the rule against perpetuities is twenty-one years absolute.... The trust for accumulation is void. No transgressive trust was ever sustained for any part of the common law period. We have no such statute as that of 39 and 40 Geo. 3, c. 98, commonly termed the Thelusson Act. Under that, the excess of accumulation beyond the period allowed by its provisions have been held void, and those within its limitations sustained. But such is not the common law.
>
> The annual receipts from the forty thousand dollar fund, not being allowed to be retained by the trustees, for the purpose of accumulation, fall into the residue as they accrue.

*Id.* (Citations omitted). Thus, we declared an unlimited direction to accumulate income to be void *ab initio*.

■ [¶ 22] The Moore Trust accumulation clause states, without reference to any life in being, that twenty-five percent of the trust income is "to be reinvested annu-

---

is seventy; one grandchild, C, who is fifty; and one great-grandchild, D, who is thirty. Next, assume A were to die tomorrow, B next week, and C next month. In such a scenario, the right to income from the trust would have passed through three nonlife in being beneficiaries to D, the great great grandchild of the last life in being, in whom the right to income would have vested within approximately one month from the death of the last life in being.

**13.** The RESTATEMENT (SECOND) OF PROPERTY includes as lives in being:

> (b) Those individuals alive when the period of the rule begins to run, if reasonable in number, who have beneficial interests vested or contingent in the property in which

the non-vested interest in question exists and the parents and grandparents alive when the period of the rule begins to run of all beneficiaries of the property in which the non-vested interest exists....

RESTATEMENT (SECOND) OF PROPERTY Donative Transfers § 1.3(2)(b) (1981).

With respect to the Moore Trust, there remain numerous lives in being, that are as follows: the children of Rachel Moore Lopez—April L. White, William D. Lopez, Albert F. Lopez, and Mark Lopez; Nancy Tancredi; Robert J. Tancredi; and Robert Sapiro, Nancy Tancredi's son. All of these family members, who are affected by the trust, were alive when Mr. Moore died in 1970, and are therefore the lives in being that will be used to measure the longevity of the Moore Trust.

ally for the increase of the funds of the trust." Thus, in accordance with *Kimball's* recognition that the appropriate period is twenty-one years absolute, the accumulation clause violates the rule against accumulations.

[¶ 23] Maine's "wait and see" statute is in derogation of the common law, and as such, must be narrowly construed. *See Brand v. Seider,* 1997 ME 176, ¶ 9, 697 A.2d 846, 849. Fleet contends that Maine's "wait and see" statute applies to both the rule against perpetuities and the rule against accumulations. However, although the two rules are related, they are separate rules, as demonstrated by those state statutes that address the rule against accumulations separately.[14] Both Fleet and the guardian ad litem assert that the Court should adopt the approach of the RESTATEMENT (SECOND) OF PROPERTY, DONATIVE TRANSFERS § 2.2 (1981), that states an accumulation of income in a noncharitable trust is "valid until the period of the rule against perpetuities expires with respect to such trust and any accumulation thereafter is invalid." In *Kimball,* however, we expressly rejected this approach, refusing to adopt the Thelusson Act, that, similar to the Restatement, provided that accumulations beyond the perpetuities period would be void, while those within the period would be allowed. *Kimball,* 53 Me. at 273.

[¶ 24] Maine's "wait and see" statute was enacted in 1954. *See* P.L.1955, ch. 244. By then 90 years of trust accumulation clause practice, including the 1947 will in this case, had been governed by the *Kimball* interpretation. If the legislature intended to include accumulations clauses within the scope of the "wait and see" statute, it could have so stated. As the legislature did not make such an intention clear within the language of the statute, or in legislative history, we may not adopt such an inference. To rule otherwise and effectively add the "wait and see" law to the rule against accumulations would significantly change more than a century of trusts and estates practice. That is an issue more appropriately left to the legislature to decide.

[¶ 25] Mr. Moore made no provision in his will for the distribution of the trust corpus or the accumulated income. Accordingly, all property contained in an ineffective portion of the trust must be deemed to be held in a resulting trust on behalf of Mr. Moore's heirs. *See Fitzsimmons v. Harmon,* 108 Me. 456, 460, 81 A. 667, 669 (1911). Thus, that portion of the trust corpus that the trustee holds as a result of the invalid accumulation must be disbursed according to the rules of intestacy.

The entry is:

Judgment of the Cumberland County Probate Court on report affirmed. Remanded for further proceedings as ordered by that Court.

---

14. *SEE, E.G.,* CAL. CIV. CODE § 724 (West Supp. 1982); MINN. STAT. § 500.17 (1980); IND. CODE § 32-1-4-2 (1976); MICH. COMP. LAWS § 554.36 (1967); N.Y. EST. POWERS & TRUSTS LAW § 9-2.1 (McKinney 1967); PA. CONS. STAT. ANN. tit. 20, § 6106 (1972).