2003 ME 130

**GUARDIANSHIP OF I.H.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Sept. 25, 2003.
Decided: Nov. 4, 2003.

**CALKINS, J.**

[¶ 1] The Kennebec County Probate Court (*Mitchell, J.*) has reported two questions, pursuant to M.R.App. P. 24(a), that arose during the pendency of a petition for guardianship of a minor. The first question asks: "Pursuant to 18–A M.R.S.A. § 5–207(a)(3) [ (1998) ] what notice, if any, must be given to an anonymous sperm donor who donated sperm under a California law guaranteeing anonymity?"[1] We accept the report of this question and conclude that when the Probate Court, in a guardianship proceeding, is satisfied that the child's father is an anonymous sperm donor, notice to the donor of the proceeding may be waived.

[¶ 2] The second question asks: "Pursuant to 18–A M.R.S.A. § 5–204(b) [ (1998) ], may the Probate Court appoint a co-guardian with a natural or legal parent?" We discharge this portion of the report and decline to answer the question because the reported question differs from the question argued and briefed by the petitioners and because the court made no factual findings on best interests of the child.

## I. FACTS AND BACKGROUND

[¶ 3] The petitioners are the natural mother of I.H.,[2] age one, and the mother's domestic partner. The petitioners, who state that they have a committed relationship as lesbian partners, decided to have a child soon after they began living together. Their physician's office obtained sperm through California Cryobank, Inc., and with medical assistance, the mother conceived the child. The Probate Court made

Patricia A. Peard, Esq., Bernstein Shur Sawyer & Nelson, P.A., Portland, Mary L. Bonauto, Esq., Gay & Lesbian Advocates & Defenders, Boston, MA, Judith M. Berry, Esq., Gorham, for petitioners.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.

1. The California statute to which the court refers is CAL. FAM. CODE § 7613(b) (West 1994), although that statute by its terms does not appear to guarantee anonymity: "The donor of semen provided to a licensed physician and surgeon for use in artificial insemination of a woman other than the donor's wife is treated in law as if he were not the natural father of a child thereby conceived."

2. The Probate Court granted the petitioners' motion to seal the file in this matter and to identify the case as "In Re: I.H."

a factual finding that the child was conceived with sperm from an anonymous donor obtained from a California sperm bank.

[¶ 4] During the pregnancy and since the child's birth, the mother and the partner have both performed the duties of parents to I.H. Soon after the birth, the petitioners executed a co-parenting agreement and a domestic partnership agreement. Their intentions with these documents are to provide for the best interests of I.H. and to acknowledge their familial and economic relationship. The petitioners agree that they will have a joint role in decisions regarding the child and in his care and support. They have executed wills in which they designate each other as the guardian of I.H., should either die.

[¶ 5] The petitioners also desire that they be appointed coguardians of the child, and, to that end, they filed the instant petition. They made a motion to waive the statutory notice requirement, alleging that they do not know the identity of the sperm donor and are unable to serve notice of the petition on the child's biological father.

## II. NOTICE TO SPERM DONOR

### A. Acceptance of Reported Question

[¶ 6] We must determine preliminarily whether to answer the reported questions. As an exception to the final judgment rule, the procedure permitting a trial court to report questions to the Law Court "'should be used sparingly.'" *White v. Fleet Bank of Me.*, 1999 ME 148, ¶ 2, 739 A.2d 373, 374–75 (quoting *Luhr v. Bickford*, 661 A.2d 1141, 1142 (Me.1995)). The rule requires that the question be of "sufficient importance or doubt," and that the answer "in at least one alternative finally dispose of the action." M.R.App. P. 24(a). In addition to these factors, we also look to whether the question might never

have to be decided "because of other possible dispositions." *Morris v. Sloan*, 1997 ME 179, ¶ 7, 698 A.2d 1038, 1041. We consider whether our acceptance of the report will encourage piecemeal litigation. *Id.* When the answer to a reported question is readily apparent from the record, we discharge the report as improvidently granted by the trial court. *Bergey v. Degreenia*, 675 A.2d 112, 113 (Me.1996).

[¶ 7] The first question, concerning the requirement of notice, is of sufficient importance to merit answering it on report. Maine has neither statutes nor case law regarding anonymous sperm donors. The answer is in doubt because there are potential alternatives such as waiver of notice and service by publication. Furthermore, the Probate Court, in its order, states that the question is raised with increasing frequency. It is a threshold issue that must be resolved before the guardianship petition can go forward. Although the only answer that would end the case finally is the unlikely answer that personal service is required, this possible answer is sufficient to meet our requirement that the answer would in one alternative finally dispose of the case. We do not foresee that our answering this question on report will encourage piecemeal litigation. For these reasons, we accept the report on the first question and answer it.

### B. Answer to the Notice Question

[¶ 8] The Probate Court made a factual finding that the biological father of I.H. is an anonymous sperm donor. The court had evidence that the sperm used in I.H.'s conception was provided by a California sperm bank that keeps the identity of its donors confidential and that obtains written waivers of all claims to parenthood from its donors.

[¶ 9] There is no Maine statute or rule concerning the notice that must be given

to anonymous sperm donors in guardianship proceedings or in any other court proceeding. The procedure for the appointment of a guardian for a minor by the court, as set forth in the Probate Code, requires notice of the petition to any parent of the minor. The pertinent portion states:

> (a) Notice of the time and place of hearing of a petition for the appointment of a guardian of a minor is to be given by the petitioner in the manner prescribed by court rule under section 1-401 to:
>
> . . .
>
> (3) Any living parent of the minor.

18–A M.R.S.A. § 5–207(a) (1998). This provision includes a reference to 18–A M.R.S.A. § 1–401 (1998), which states that the notice shall be in the manner provided by rule. The pertinent rule is M.R. Prob. P. 4(d)(1)(B) calling for service by mail or in person in formal proceedings in the Probate Court, which is obviously impossible without knowing the identity of the person to be served. The rule allows for service of a notice by publication upon unknown persons. *Id.*

[¶ 10] The petitioners argue that section 5–207(a) does not require notice on an anonymous sperm donor because the donor is not a "parent" as defined in the Probate Code. The definitional section of the Code provides:

> "Parent" includes any person entitled to take, or who would be entitled to take if the child died without a will, as a parent under this Code by intestate succession from the child whose relationship is in question and excludes any person who is only a stepparent, foster parent, or grandparent.

18–A M.R.S.A. § 1–201(28) (1998).[3]

[¶ 11] The problem with the petitioners' assertion that an anonymous sperm donor is not a "parent" under the Probate Code is that this case is not about intestate succession. The petitioners ignore the word "includes" in section 1–201(28) and interpret the statute as if the term "parent" was limited to persons entitled to inherit from a child who dies intestate. We do not agree that the term "parent" is so limited in guardianship proceedings. For purposes of notice in a guardianship proceeding, we will not confine the term "parent" to its meaning for intestate succession. There is nothing in the Probate Code that indicates that the Legislature intended the term "parent" as used in the guardianship statutes to be limited to its meaning for purposes of intestate succession.

[¶ 12] The term "parent" is defined in several Maine statutes, but none of the definitions exclude an anonymous sperm donor as a parent.[4] *See, e.g.,* 18–A

---

3. This definition is further amplified by 18–A M.R.S.A. § 2–109 (1998), which "for purposes of intestate succession" limits fathers to three categories. "[A] person is . . . a child of the father if": (1) the natural father participated in a marriage ceremony with the natural mother; (2) the father adopted the child; or (3) the father either acknowledged the child in writing or was adjudicated to be the father by a court and "openly treated the child as his and has not refused to support the child." *Id.* § 2–109(2).

4. Maine has not adopted either the 1973 or 2000 version of the Uniform Parentage Act. Section 702 of the 2000 version of the Uniform Parentage Act provides: "A donor is not a parent of a child conceived by means of assisted reproduction." UNIF. PARENTAGE ACT (2000) § 702, 9B U.L.A. 355 (2001). "Assisted reproduction" includes "intrauterine insemination." *Id.* § 102(4)(A), 9B U.L.A. 7 (Supp.2003). "Intrauterine insemination" is the current term for what used to be called "artificial insemination." *Id.* § 702 cmt., 9B U.L.A. 355 (2001).

M.R.S.A. § 9–102(h) (1998); 19–A M.R.S.A. § 101(8) (1998) (defining "parent" as "the legal parent or the legal guardian when no legal parent exists"). Thus, the statutory definitions of "parent" are not helpful in determining whether notice of a guardianship petition must be served upon an anonymous sperm donor.

[¶ 13] Generally speaking, when the identity of a defendant in an action is unknown, as, for example, in a case to quiet title to real estate, notice to unknown defendants is made by publication. 14 M.R.S.A. § 6653 (2003). In such cases, publication notice has some possibility of actually notifying people who may have an interest because the notice published in the newspaper describes the property, M.R. Civ. P. 4(g)(2), and names the people under whom the unknown person may claim the land, *see* 14 M.R.S.A. § 6653. Likewise for proceedings in Probate Court concerning a will, the published notice must contain the name of the decedent. M.R. Prob. P. 4(e)(1); 4(a)(1)(A), (B). The Probate Rules can also be read to provide service by publication upon an unknown parent, in which case the name of the minor must be provided in the published notice. *Id.* 4(a)(1)(B).[5]

[¶ 14] Notice by publication, however, would seem to have virtually no chance of giving actual notice to an anonymous sperm donor. When the sperm donor is anonymous, it is not known where he is most likely to be located, and assuming that the sperm bank has honored its pledge of confidentiality of the names of the recipients of the sperm, neither the mother's name nor the child's name would mean anything to the donor. Even if the court were to order publication of the names of the mother and the child in California on the theory that the donor probably lived in California at the time of the donation, the possibility that the donor would actually be notified is so remote as to be non-existent. Because serving notice by publication is not reasonably likely to provide actual notice to the sperm donor, requiring such notice would subject petitioners to procedures and expense for no realistic purpose.

[¶ 15] Dispensing with the requirement of service when the father of the child is an anonymous sperm donor is further supported by the rationale that donors, who donate sperm to a sperm bank that promises confidentiality, do so with the intention of remaining anonymous and unconnected to the child conceived. This intention is generally recognized in commentary and cases. Richard F. Storrow, *Parenthood By Pure Intention: Assisted Reproduction and the Functional Approach to Parentage*, 53 HASTINGS L.J. 597, 628 (2002); *People v. Sorensen,* 68 Cal.2d 280, 66 Cal.Rptr. 7, 437 P.2d 495, 498 (1968); *In re Adoption of Michael,* 166 Misc.2d 973, 636 N.Y.S.2d 608, 609 (N.Y.Sur.Ct.1996). This concept is likewise

---

Section 5(b) of the 1973 version of the Uniform Parentage Act provides: "The donor of semen provided to a licensed physician for use in artificial insemination of a married woman other than the donor's wife is treated in law as if he were not the natural father of a child thereby conceived." UNIF. PARENTAGE ACT (1973) § 5(b) (amended 2000), 9B U.L.A. 408 (2001). California is one of the states that has enacted a slightly-amended version of this provision. CAL. FAM. CODE § 7613(b) (West 1994).

5. In an adoption proceeding, when the father of the child is unknown, the statute requires that he be notified by publication. The publication must be in a "newspaper of general circulation in the area where the petition is filed, where the biological mother became pregnant or where the putative father is most likely to be located. The notice must specify the names of the biological mother and the child." 18–A M.R.S.A. § 9–201(b) (1998).

recognized by section 5(b) of the Uniform Parentage Act (1973) and section 702 of the Uniform Parentage Act (2000). *See People v. Shreve*, 324 Ill.App.3d 661, 258 Ill.Dec. 440, 756 N.E.2d 422, 429 (2001) (holding that service need not be attempted on an anonymous sperm donor even though the Illinois version of the 1973 Uniform Parentage Act did not strictly apply because the child's mother was unmarried). By anonymously donating sperm, the donor has signified his wish to remain unknown and to forego any claim to parenthood of a child conceived by his sperm.

■ [¶ 16] Therefore, we hold that when a petition for the guardianship of a minor is filed and the Probate Court is satisfied that the evidence demonstrates that the biological father of the minor is an anonymous sperm donor, the court may waive service on the donor. In summary, our two reasons for this holding are the improbability of actually notifying an anonymous sperm donor of a guardianship petition and the fact that anonymous sperm donors wish to remain anonymous.

### III. COGUARDIANSHIP

■ [¶ 17] The second reported question asks: "Pursuant to 18–A M.R .S.A. § 5–204(b) [ (1998) ], may the Probate Court appoint a co-guardian with a natural or legal parent?" The statute itself expressly provides that the court may appoint "coguardians" and does not exclude natural or legal parents. Thus, the answer to the reported question is not in doubt. However, the petitioners ask a different question in their briefs. They ask us to determine whether the mother may retain all of her rights and responsibilities with regard to the child if she consents to her partner and herself being named coguardians. Because this question is not the question propounded by the court in the

order of report and because the answer to the reported question is not in doubt, we discharge the report.

[¶ 18] There is a further reason for discharging the report. Although the court indicated that it was inclined to grant the petition and appoint the petitioners as coguardians, it made no findings regarding the type of guardianship that it would grant. In its order, the court stated,

Although this case presents a same sex couple, the question whether a nonparent and a parent may be co guardians [*sic*] arises much more often, and with no logical distinction, in biological families when parents want their children to live with relatives, and go to school where the relatives live, but do not want to give up parental rights.

This statement itself suggests that there are several situations in which coguardianships may be appropriate but in which the scope of responsibilities and duties may vary. In the example given by the court of a coguardianship for the purpose of school attendance, a limited coguardianship to the relative is likely to be more appropriate than an unlimited coguardianship.

[¶ 19] A Probate Court has the authority to grant limited guardianships and appoint a guardian with specified and limited duties. 18–A M.R.S.A. § 5–105 (1998). In determining whether to grant a guardianship, a court decides what is in the best interests of the child. 18–A M.R.S.A. § 5–204(b), (c) (1998). This must likewise be true when a court determines whether to grant a full or a limited guardianship or coguardianship.

[¶ 20] The petition in this case requests that both petitioners be appointed the full panoply of rights and duties concerning I.H. Although the court indicated it was inclined to grant the petition, it made no

factual findings that an unlimited coguardianship was in the best interests of the child.[6] The fact that it gave an example of a situation in which a limited guardianship would more often be in the child's best interests than an unlimited one, indicates that the court has not considered what, if any, limits it would place on the coguardianship. It is possible that the court could find that a limited coguardianship would be in I.H.'s best interests. A limited guardianship is a possible disposition that may resolve the petitioners' underlying question of whether the natural mother retains all of her parental rights. For this additional reason, we discharge the second reported question.

The entry is:

The report of question number one is accepted and answered herein. The report of question number two is discharged. The case is remanded to the Probate Court.

---

6. *See Costigan v. Costigan,* 418 A.2d 1144, 1146–47 (Me.1980) (holding that the court properly determined a child's best interests when the court "carefully examined and evaluated" all factors relevant to the child's well-being).