MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:       2013 ME 89
Docket:         Yor-13-26
Argued:         September 10, 2013
Decided:        October 31, 2013

Panel:          SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and
                JABAR, JJ.

## LITTLEBROOK AIRPARK CONDOMINIUM ASSOCIATION

v.

## SWEET PEAS, LLC, et al.

SILVER, J.

[¶1]  This matter comes before us pursuant to M.R. App. P. 24(c) on report
from the Superior Court (York County, *Fritzsche, J.*).  Littlebrook Airpark
Condominium Association ("the Association") brought this action seeking, among
other things, a declaratory judgment clarifying the rights of the parties pursuant to
a lease of real property.  The reported question concerns the effectiveness of an
unrecorded amendment to a lease that violates a recorded mortgage covenant.  The
Superior Court concluded that the lease amendment was effective, notwithstanding
the mortgage covenant and a subsequent foreclosure.  We discharge the report.

## I.  BACKGROUND

[¶2]  The following facts are drawn from the summary judgment record.  On
March 18, 1999, John Hardy leased part of the land comprising Littlebrook Airport

2

in Eliot to Littlebrook Airport Development Co., Inc. ("LADC"), for a term of twenty years. The stated purpose of the lease was to allow for the maintenance and sale of hangar units on the property as condominium units for the storage of private aircraft. The same day, Jean M. Hardy, John Hardy's wife and the president of LADC, executed a Declaration of Condominium submitting the leased property to the Maine Condominium Act, 33 M.R.S. §§ 1601-101 to 1604-118 (2012). Both the lease and the declaration were recorded in the York County Registry of Deeds.[1] By a recorded deed dated October 17, 2000, John Hardy conveyed his interest in the leased property to himself and Jean Hardy as joint tenants. John Hardy died on November 15, 2000, leaving Jean Hardy as the sole surviving owner of the leased property.

[¶3] By a recorded deed dated June 30, 2005, Jean Hardy sold the leased property to Littlebrook Ventures, LLC. She also assigned to Littlebrook Ventures her interest in the lease, as successor to John Hardy. James Barrett was the sole member of Littlebrook Ventures. Simultaneously with the conveyance from Jean Hardy, Littlebrook Ventures executed and delivered to Hardy a mortgage deed for the leased property to secure the purchase price. Pursuant to the mortgage, which was recorded, Littlebrook Ventures agreed "not to . . . modify any . . . leases or

---

[1] The lease was amended later in 1999 in a manner not relevant to this appeal.

tenancies [on the property] . . . in whole or in part, without [Hardy's] prior written consent." Both the deed and the mortgage stated that the conveyance was subject to the lease and the declaration as amended in 1999. As further security, Littlebrook Ventures assigned to Hardy its interest in the lease. In the recorded assignment, Littlebrook Ventures agreed "not to alter, modify or change the terms of [any leases on the property] . . . without the prior written consent of [Hardy]."

[¶4] On the same day, LADC, through Hardy as its president, assigned its rights as declarant of the condominiums pursuant to the Maine Condominium Act to Windmill USA, LLC ("Windmill"). Barrett was the sole member of Windmill. LADC also assigned its interest in the lease to Windmill, which assumed all of LADC's obligations as tenant.

[¶5] Windmill, through Barrett as its sole member, executed a document styled as an "Amendment to Declaration of Condominium," dated October 11, 2005. The document, which was recorded, purports to extend the term of the lease to 2059—an additional forty years beyond the original twenty-year term—and to give unit owners the right to use the runway on the property without a fee. Two days later, on October 13, 2005, Littlebrook Ventures and Windmill, through Barrett as sole member of both entities, signed an "Addendum to Lease" purporting to amend the lease in accordance with the declaration amendment by

4

extending the term of the lease and allowing use of the runway without a fee. The lease amendment was not recorded, and Hardy did not give prior written consent.

[¶6] Littlebrook Ventures conveyed the property back to Hardy by a deed in lieu of foreclosure dated December 15, 2005, and recorded on March 31, 2006. The deed did not discharge the mortgage or reference the 2005 amendments, but stated that it was subject to the declaration and lease as amended in 1999. In July 2006, Hardy enforced her statutory power of sale and purchased the property at the foreclosure sale. Hardy then conveyed the property to Sweet Peas, LLC, via a quitclaim deed without covenants dated October 25, 2006. This conveyance was explicitly made subject to the 2005 declaration amendment, but not the 2005 lease amendment. Sweet Peas later executed a mortgage in Hardy's favor.

[¶7] On July 8, 2011, the Association filed a nine-count complaint against Sweet Peas, naming Hardy as a party in interest. One of the counts sought a declaratory judgment that the 2005 amendments to the lease and declaration were effective and binding against Sweet Peas. The other counts allege breach of contract, conversion, violation of airport standards, harassment or nuisance, tortious interference with a contract, and retaliatory eviction. These counts allege, among other things, that Sweet Peas has failed to maintain and repair the airport facilities; interfered with the Association's use of the airport facilities; improperly demanded reimbursement for expenses; removed a windsock that the Association

had installed on the property; violated various legal provisions regarding the operation of airports; advised the individual hangar unit owners to discontinue their use of airport facilities and called the police on those who persisted; interfered with the Association's relationship with the unit owners by communicating with the unit owners directly; and retaliated against the Association and unit owners in an attempt to cause an early termination of the lease after negotiations for the sale of the airport to the Association broke down. Sweet Peas filed a counterclaim against the Association as well as a third-party complaint against several individual unit owners. These claims allege that the Association and the named unit owners caused damage to the runway and tarmac, and wrongfully withheld rent. On October 31, 2011, Sweet Peas and Hardy both moved for partial summary judgment on the declaratory judgment count of the Association's complaint. The Association opposed the motions and filed a cross-motion for partial summary judgment on that count.

[¶8] After a hearing on the cross-motions for summary judgment, the court entered judgment in favor of the Association on April 26, 2012. The court concluded that "the October 11, 2005 amendment to declaration of condominium and October 13, 2005 addendum to lease are valid and enforceable."[2] The court

---

[2] On May 7, 2012, Sweet Peas and Hardy moved to alter or amend the judgment pursuant to M.R. Civ. P. 59(e). On August 22, 2012, the court granted the motion to the extent that it sought correction of typographical errors in the original opinion, but otherwise denied the motion.

6

reasoned that "Barrett's actions constitute [an] act of default but do not void the lease amendments" as against the Association because "there was no agreement where the [Association] subordinated its rights to . . . Hardy as the mortgage holder." On January 7, 2013, at the request of Sweet Peas and Hardy, and over the Association's objection, the court reported the case to the Law Court pursuant to M.R. App. P. 24(c) for determination of "the legal question with respect to the 40 year lease amendment and whether or not the lease amendment survived the foreclosure." The court acknowledged that "a Law Court decision would not 'in at least one alternative finally dispose of the action,'" and that Rule 24(c) should be used "sparingly," but indicated its belief that "the issues are of sufficient doubt and importance and would resolve the central dispute in this case."

## II. DISCUSSION

[¶9] "Rule 24 permits parties, in limited circumstances, to obtain review from the Law Court prior to obtaining a final judgment from the trial court." *Liberty Ins. Underwriters, Inc. v. Estate of Faulkner*, 2008 ME 149, ¶ 5, 957 A.2d 94. We have discretion to accept or reject a report pursuant to Rule 24, *see Despres v. Moyer*, 2003 ME 41, ¶ 14, 827 A.2d 61, and have indicated that Rule 24 "should be used sparingly," *Bank of Am., N.A. v. Cloutier*, 2013 ME 17, ¶ 8, 61 A.3d 1242; *see also Liberty Ins. Underwriters*, 2008 ME 149, ¶ 5, 957 A.2d 94. Rule 24(c) provides:

> If the trial court is of the opinion that a question of law involved in an interlocutory order or ruling made by it ought to be determined by the Law Court before any further proceedings are taken, it may on motion of the aggrieved party report the case to the Law Court for that purpose and stay all further proceedings except such as are necessary to preserve the rights of the parties without making any decision therein.

M.R. App. P. 24(c). When the trial court reports questions for review, we independently determine whether acceptance of the report "is consistent with our basic function as an appellate court, or would improperly place us in the role of an advisory board." *Cloutier*, 2013 ME 17, ¶ 8, 61 A.3d 1242; *see also Liberty Ins. Underwriters*, 2008 ME 149, ¶ 6, 957 A.2d 94. In making this determination, we consider the following factors: (1) whether "the question reported is of sufficient importance and doubt to outweigh the policy against piecemeal litigation"; (2) whether "the question might not have to be decided because of other possible dispositions"; and (3) whether "a decision on the issue would, in at least one alternative, dispose of the action." *Cloutier*, 2013 ME 17, ¶ 8, 61 A.3d 1242; *see also Liberty Ins. Underwriters*, 2008 ME 149, ¶¶ 7-9, 957 A.2d 94; *Despres*, 2003 ME 41, ¶ 14, 827 A.2d 61.

A.     Sufficient Importance and Doubt

[¶10]  The final judgment rule "promotes efficiency and reduces costs by requiring parties to obtain a final judgment at the trial level before seeking appellate review." *Liberty Ins. Underwriters*, 2008 ME 149, ¶ 5, 957 A.2d 94.

Because Rule 24 is an exception to the final judgment rule, we will accept a report only if the significance of the issue presented outweighs the policy underlying that rule. *See Cloutier*, 2013 ME 17, ¶ 8, 61 A.3d 1242; *see also Guardianship of I.H.*, 2003 ME 130, ¶ 6, 834 A.2d 922 ("We consider whether our acceptance of the report will encourage piecemeal litigation.") In making this determination, we have considered whether the issue is novel and capable of repetition. *See, e.g.*, *Baker v. Farrand*, 2011 ME 91, ¶ 9, 26 A.3d 806; *Liberty Ins. Underwriters*, 2008 ME 149, ¶¶ 7, 11, 957 A.2d 94; *York Register of Probate v. York Cnty. Probate Ct.*, 2004 ME 58, ¶ 12, 847 A.2d 395. We have rejected reports "when the issue is not novel, when it can be resolved by applying well established rules of law, and when it does not require statutory interpretation." *Despres*, 2003 ME 41, ¶ 14, 827 A.2d 61; *see also Guardianship of I.H.*, 2003 ME 130, ¶ 6, 834 A.2d 922 ("When the answer to a reported question is readily apparent from the record, we discharge the report as improvidently granted by the trial court.").

[¶11] The parties have not cited, and we cannot locate, any Maine authority squarely addressing the precise issue of whether an unrecorded lease amendment prohibited by a prior recorded mortgage is effective as between the mortgagee and a third party following a foreclosure on the property. Although novelty of an issue can meet the requirement of importance and doubt, *see Liberty Ins. Underwriters*, 2008 ME 149, ¶ 7, 957 A.2d 94, we think that this issue may be resolved on the

basis of broader principles of law.  This factor therefore weighs against acceptance of the report.  *See Despres*, 2003 ME 41, ¶ 14, 827 A.2d 61; *Guardianship of I.H.*, 2003 ME 130, ¶ 6, 834 A.2d 922.

B.      Other Possible Dispositions

[¶12]  We will not accept a report if the question reported "might not have to be decided because of other possible dispositions."  *Cloutier*, 2013 ME 17, ¶ 8, 61 A.3d 1242; *see also Despres*, 2003 ME 41, ¶ 14, 827 A.2d 61.  "If, for example, fact-finding or determination of a preliminary issue such as the statute of limitations may render the reported question moot, the question may be discharged."  *Liberty Ins. Underwriters*, 2008 ME 149, ¶ 8, 957 A.2d 94.  Because there do not appear to be any dispositive threshold issues and the parties have filed cross-motions for summary judgment on largely undisputed facts, it does not appear that further proceedings would likely render the reported question moot. *See Cloutier*, 2013 ME 17, ¶¶ 9-10, 61 A.3d 1242 (accepting a reported question where "given the . . . pending motion for summary judgment, and the apparent absence of disputed facts in the record, it did not appear that resolution of the question could be avoided.").  This factor therefore weighs in favor of acceptance of the report.

10

C.      Dispose of the Action in One Alternative

[¶13]    M.R. App. P. 24(a) requires that "the decision [on the reported question] would in at least one alternative finally dispose of the action."  Although Rule 24(c) has no similar language, we nevertheless consider this factor in deciding whether to accept a Rule 24(c) report.  *See Liberty Ins. Underwriters*, 2008 ME 149, ¶¶ 7-9, 957 A.2d 94; s*ee also* Alexander, *Maine Appellate Practice* § 24.1 at 191 (4th ed. 2013) ("[Although] Rule 24(c) does not explicitly require a determination that . . . the report will, in at least one alternative, finally dispose of the action, . . . precedent establishes that . . . [this] prerequisite[] govern[s] Law Court consideration of Rule 24(c) reports.").    In discussing former M.R. Civ. P. 72(c), the predecessor to Rule 24(c), *see Despres*, 2003 ME 41, ¶ 14 n.2, 827 A.2d 61, we have indicated that "the reporting of an interlocutory issue is not strictly limited to those cases in which a decision by the Law Court would, in at least one alternative, dispose of the action, [but] certainly this fact would be relevant to the trial court in assessing whether to report an issue pursuant to Rule 72(c) and to us in deciding whether to accept the report," *Meiners v. Aetna Cas. & Sur. Co.*, 663 A.2d 6, 8 (Me. 1995); *see also Morris v. Sloan*, 1997 ME 179, ¶ 7, 698 A.2d 1038 ("Although Rule 72(c) does not require us to do so, we may take into account whether our decision will in at least one alternative dispose of the action." (quotation marks omitted)).  In considering this factor, "[i]t

is sufficient that there be one possible avenue for decision that would dispose of the action." *Liberty Ins. Underwriters*, 2008 ME 149, ¶ 9, 957 A.2d 94.

[¶14] Here, because the original lease term has not yet expired, most of the remaining counts of the Association's complaint—including counts alleging damage to or failure to maintain airport facilities, interference with the Association's relationship with the individual unit owners, and conversion of a windsock—do not turn on the validity of the lease amendment. Indeed, the lease amendment would impact the remaining counts only to the extent that they involve fees for use of the runway, which the lease amendment purported to eliminate. As the trial court found, "a Law Court decision would not 'in at least one alternative finally dispose of the action.'" This factor therefore weighs against acceptance of the report.

D.   Conclusion

[¶15] On balance, we conclude that acceptance of the report in this case would not be "consistent with our basic function as an appellate court" and "would improperly place us in the role of an advisory board." *See Cloutier*, 2013 ME 17, ¶ 8, 61 A.3d 1242. We therefore exercise our discretion to reject the report. *See Despres*, 2003 ME 41, ¶ 14, 827 A.2d 61. We take this opportunity to reiterate that Rule 24 should be used sparingly, in accordance with the analysis we have

articulated. *See Cloutier*, 2013 ME 17, ¶ 8, 61 A.3d 1242; *Liberty Ins.*
*Underwriters*, 2008 ME 149, ¶¶ 5, 7-9, 957 A.2d 94.

The entry is:

> Report discharged. Remanded for further
> proceedings consistent with this opinion.

_____

**On the briefs:**

Gene R. Libby, Esq., Libby O'Brien Kingsley & Champion, LLC,
Kennebunk, for appellants Sweet Peas, LLC and Jean M. Hardy

James A. Hopkinson, Esq., and Gerald B. Schofield, Hopkinson &
Abbondanza, P.A., Portland, for appellee Littlebrook Airpark Condominium
Association

**At oral argument**

Gene R. Libby, Esq., for appellants Sweet Peas, LLC and Jean M. Hardy

James A. Hopkinson, Esq., for appellee Littlebrook Airpark Condominium
Association