DANIEL WEBB *vs.* PHILIP BRANNEN.

Aroostook.        Opinion August 13, 1929.

*Ransford W. Shaw*, for plaintiff.
*A. S. Crawford, Jr.*, for defendant.

SITTING: WILSON, C. J., DUNN, DEASY, STURGIS, BASSETT, FARRINGTON, JJ.

FARRINGTON, J.   This case comes up on general motion for a new trial, after verdict for the plaintiff.

On January 28, 1920, one Wilbur C. Hersey, as security for a loan, gave the Houlton Savings Bank a mortgage for sixteen hundred dollars ($1,600.00) on a farm purchased by him. Seven notes were given. On the four notes first to become due, aggregating six hundred dollars ($600.00), Hersey procured as security, additional to the mortgage, the signatures of William Gerrish, Elmer Hersey, and Daniel Webb, the plaintiff.

Some time in 1921, Hersey gave other mortgages to parties by the name of Tarbell amounting to six hundred seventy-five dollars ($675.00).

On May 1, 1922, Hersey sold the farm for twenty-eight hundred dollars ($2,800.00) to one George Sanders, his father-in-law, who,

as part of the purchase price, was to pay the outstanding mortgages.

Later Sanders had talk with Phillip Brannen, the defendant, which finally resulted in a sale of the farm to the defendant. The deed which was dated April 20, 1927, executed April 21, 1927, and recorded April 22, 1927, was taken in the name of the defendant's son, Alfred P. Brannen.

The printed evidence in the case discloses a sharp conflict between the testimony of Sanders and that of the defendant in regard to the purchase price of the farm.

Sanders testified that the price finally agreed upon was twenty-six hundred dollars ($2,600.00), which was sufficient to take care of the face of the Houlton Savings Bank mortgage (sixteen hundred dollars [$1,600.00]), (which Sanders testified was the amount he understood was due on the principal), the Tarbell notes amounting to six hundred seventy-five dollars ($675.00), and the balance of three hundred twenty-five dollars ($325.00) to be paid to Sanders. "The interest, whatever it was" at the bank was to be paid by the defendant. Sanders testified that when the deed was delivered he had no knowledge that any of the Houlton Savings Bank notes had been paid in reduction of the sixteen hundred dollar ($1,600.00) mortgage.

The defendant testified that Sanders first talked with him about the farm in 1926 and asked twenty-eight hundred dollars ($2,800.00), and that in January, 1927, there was further talk and that Sanders still asked twenty-eight hundred dollars ($2,800.00) ; that in March, 1927, Sanders talked twenty-six hundred dollars ($2,600.00) ; that Sanders said the Tarbells had a mortgage and that the Houlton Savings Bank had one; that Sanders asked him if he was in Houlton to go to the Bank and to ask about it; that he reported to Sanders that the bank mortgage was one thousand dollars ($1,000.00) and interest; that Sanders wanted him to make an offer and that he said to Sanders, "I'll give you two thousand dollars" and "I'll take a chance on the interest" (meaning bank interest) ; that on April 19, 1927, Sanders said to him, "I am going to take you up on your offer," and that he asked if he meant defendant was to pay the bank one thousand dollars ($1,000.00) and interest and pay him (Sanders) one thousand

dollars ($1,000.00), and that Sanders replied, "Yes"; that on April 20, 1927, defendant said he would take the farm if the title was all right and that he had an examination of the records made but only as far as they related to any possible attachment by Webb, the plaintiff; that the deed was prepared under his direction and executed and delivered on April 21, 1927.

From the evidence it appears that the Tarbell notes of six hundred seventy-five dollars ($675.00) were paid and three hundred twenty-five dollars ($325.00) paid to Sanders, and apparently payment of the mortgage to the bank was assumed by the defendant.

Prior to this transaction between Sanders and defendant, the Houlton Savings Bank had sued Webb, the plaintiff, as indorser of the first four notes, amounting to six hundred dollars ($600.00), given by Hersey and hereinbefore referred to, as forming part of the original sixteen hundred dollar ($1,600.00) loan, the other two indorsers having died, and judgment for seven hundred eighty-six dollars and eighty-three cents ($786.83) was recovered against Webb on the third Tuesday of November, 1926, and was paid by him January 13, 1928. Webb testified that he did not before the sale of the farm to defendant tell either Hersey or Sanders that he had paid the four notes represented in the judgment which he settled.

The plaintiff learned from Wilbur Hersey of the sale by Sanders to defendant and went to defendant's house and found him away and left a message for defendant to come and see him. The defendant came April 22, 1927, and plaintiff told him about paying the notes. The defendant told him he owed him nothing, that he did not promise to pay him anything.

On November 24, 1928, the plaintiff sued the defendant, the account annexed being,

"1927

Apr. 20 Philip Brannen to Daniel Webb, Dr.

| | |
|---|---|
| To cash paid to you by George C. Sanders for me at the time of the sale of the farm | $718.57 |
| To interest on same to date | 68.26 |
| | $786.83" |

There was a money count with specifications claiming to show that defendant received from Sanders in April, 1927, money which

in equity and good conscience belonged to the plaintiff, and a count for money had and received founded on the same specifications. At the April Term, 1929, of the Aroostook County Supreme Judicial Court the jury returned a verdict for the plaintiff for seven hundred eighty-six dollars and eighty-three cents ($786.83), and defendant filed a general motion for new trial on the usual grounds.

The jury heard the case, saw the witnesses on the stand and heard their testimony, heard the testimony of Sanders and his witnesses as to the purchase price of the farm and the testimony of the defendant, uncorroborated by any other witnesses, as to the price.

Their verdict could have resulted only on the basis of their conviction, under the instructions of the court, that the price agreed upon was twenty-six hundred dollars ($2,600.00), as testified by Sanders and the other witnesses for the plaintiff, the interest "whatever it was" to be paid by the defendant as incidental. A careful examination of the evidence in the case fails to disclose anything that would warrant disturbing that finding of fact. The question as to what was the agreed price was one upon which fair minded and reasonable men might differ, and was, for that reason, a question of fact for the jury. The plaintiff, under the decisions and well settled law of this and other states, is entitled to recover and the jury has so found.

"An action for money had and received is a most liberal action, and may be as comprehensive as a bill in equity. It was held in the case cited (referring to 17 Mass., 575) that the action may be supported without privity between the parties, other than created by law, and that the law may create both the privity and the promise. The broad ground is there taken that whenever one man has in his hands money which he ought to pay over to another, he is liable, although he has never seen or heard of the party who has the right to it. This doctrine applies to all cases when no rule of policy or strict law intervenes to prevent it." *Keene* v. *Sage*, 75 Me., 138; *Lewis* v. *Sawyer*, 44 Me., 332.

"It should be observed at the outset that the action of assumpsit for money had and received is comprehensive in its reach and scope. Though the form of the procedure is in law it is equitable in spirit and purpose and the substantial justice which it promotes renders

it favored of the courts. 'It is a familiar principle,' says the Court in *Pease* v. *Bamford*, 96 Me., 23, 'that when one person has in his possession money which in equity and good conscience belongs to another, the law will create an implied promise upon the part of such person to pay the same to him to whom it belongs, and in such a case an action for money had and received may be maintained.' " *Dresser* v. *Kronberg*, 108 Me., 423.

To the same effect are *Bither* v. *Packard*, 115 Me., 306; *Mayo* v. *Purington*, 113 Me., 452; *Carey* v. *Penney*, 127 Me., 304.

So numerous and varied have been the instances in which the courts have applied this doctrine that a further citation of authorities seems unnecessary.

The amount of the verdict, seven hundred eighty-six dollars and eighty-three cents ($786.83) was made up of seven hundred eighteen dollars and fifty-seven cents ($718.57), the amount of the execution which the plaintiff, Webb, paid to the Houlton Savings Bank on the four notes which he indorsed, with an interest item of sixty-eight dollars and twenty-six cents ($68.26).

While the defendant in this action is accountable for that which in equity and good conscience belongs to the plaintiff, the plaintiff is not entitled to more. The jury clearly found the agreed price of the farm was twenty-six hundred dollars ($2,600.00), whatever accrued interest there was to be paid by defendant. There is therefore still due from the defendant the sum of six hundred dollars ($600.00) which belongs in equity and good conscience to the plaintiff, together with seventy-two dollars and twenty cents ($72.20), interest to date of verdict on said six hundred dollars ($600.00) from April 21, 1927, the day on which the deed was delivered by Sanders to defendant and on which the balance of six hundred dollars ($600.00) should have been paid by defendant, that being the first time the money may be regarded in contemplation of law as in defendant's hands. *Fletcher* v. *Belfast*, 77 Me., 334.

The entry will therefore be,

> *Motion overruled, if plaintiff within thirty days from the filing of this mandate remits all of the verdict in excess of six hundred seventy-two dollars and twenty cents ($672.20); otherwise motion sustained and new trial granted.*