MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2013 ME 17
Docket:        Yor-12-361
Argued:        January 16, 2013
Decided:       February 7, 2013

Panel:         ALEXANDER, LEVY, SILVER, GORMAN, and JABAR, JJ.


BANK OF AMERICA, N.A.

v.

JAMES A. CLOUTIER


ALEXANDER, J.

[¶1]  The Superior Court (York County, *Fritzsche, J.*), acting pursuant to M.R. App. P. 24(a), has reported a question of law to us: "What is the proof that is required for a party to prove 'ownership' of the mortgage note and mortgage for purposes of foreclosure, as required by the decision of the Law Court in *Chase Home Finance, LLC v. Higgins*, 2009 ME 136, ¶ 11, 985 A.2d 508?"

[¶2]  The question arose in an action brought by Bank of America, N.A. against James A. Cloutier[1] for foreclosure on a residential mortgage.  We accept the report and hold that a plaintiff in a foreclosure action must identify the owner or economic beneficiary of the note and provide certain other evidence as described in 14 M.R.S. § 6321 (2012).

_____

[1]  Mortgage Electronic Registration Systems, Inc. is a named party-in-interest.

## I. CASE HISTORY

[¶3] The parties stipulated to the following facts for purposes of addressing the Superior Court's reported question.

[¶4] On January 27, 2006, James A. Cloutier executed a promissory note to American Money Centers, Inc. and a mortgage deed of property in Saco, which secures the note. The mortgage deed identified Mortgage Electronic Registration Systems, Inc. (MERS) as the mortgagee of record. MERS served as the nominee for American Money Centers and its successors and assigns. MERS subsequently assigned the mortgage to BAC Home Loans Servicing, LP.

[¶5] The note now reflects a series of endorsements beginning with American Money Centers and ending in a blank endorsement. American Money Centers endorsed the note to the order of Countrywide Bank, N.A., which endorsed it to the order of Countrywide Home Loans, Inc., which then endorsed it in blank. In March of 2006, the Federal Home Loan Corporation (Freddie Mac) purchased the note from Countywide Home Loans, which was the owner of the note at the time. Freddie Mac has not sold the note nor has it transferred its beneficial interest in the note. At present, Bank of America possesses the note, which still bears a blank endorsement.[2]

---

[2] BAC Home Loans Servicing, LP took possession of the note and then merged into Bank of America, N.A. Bank of America was substituted as the plaintiff in this case after the merger.

[¶6]  Bank of America services Cloutier's loan on behalf of Freddie Mac. Bank of America, whose actions are governed by a contract between it and Freddie Mac, has pursued this foreclosure action in its capacity as servicer.[3]

[¶7]  Cloutier failed to make the payment due on January 1, 2010, and has not made any subsequent payments.  Bank of America filed a complaint for foreclosure in the Superior Court in August of 2010.  After mediation, Bank of America moved for a summary judgment.  Before acting on the motion, the court reported the question to us pursuant to 4 M.R.S. § 57 (2012) and M.R. App. P. 24(a).

## II.  LEGAL ANALYSIS

### A.    Reported Question

[¶8]  When a trial court reports a question to us pursuant to M.R. App. P. 24(a), we conduct an independent examination to decide if answering the question is consistent with our basic function as an appellate court, or would improperly place us in the role of an advisory board.  *Baker v. Farrand*, 2011 ME 91, ¶ 7, 26 A.3d 806.  In this examination, we consider whether (1) the question reported is of sufficient importance and doubt to outweigh the policy against piecemeal

---

[3]  Servicers are responsible for the day-to-day management of mortgage loans on behalf of other entities.  Adam J. Levitin & Tara Twomey, *Mortgage Servicing*, 28 Yale J. on Reg. 1, 23 (2011).  For example, servicers send bills, collect payments, and keep track of balances.  *Id.*  We do not attribute legal significance to the term "servicer."  Our analysis addresses whether an entity is empowered to bring a foreclosure action as a "mortgagee or any person claiming under the mortgagee" pursuant to 14 M.R.S. § 6321 (2012).

4

litigation; (2) the question might not have to be decided because of other possible dispositions; and (3) a decision on the issue would, in at least one alternative, dispose of the action. *Id*. Rule 24 is an exception to the final judgment rule that should be used sparingly. *Liberty Ins. Underwriters, Inc. v. Estate of Faulkner*, 2008 ME 149, ¶ 5, 957 A.2d 94.

[¶9] Applying these standards, the Superior Court determined that reporting this question was appropriate. The Superior Court noted that the reported question has been presented to multiple trial courts with different results, which caused it to believe that the question was of sufficient doubt and importance to seek our guidance. Further, given the plaintiff's pending motion for summary judgment, and the apparent absence of disputed facts in the record, it did not appear that resolution of the question could be avoided through other dispositions. Finally, the court stated that our answer, in at least one alternative, would finally dispose of the case.

[¶10] Our independent review of the record leads us to concur with the Superior Court's conclusions. *See Baker*, 2011 ME 91, ¶ 7, 26 A.3d 806. Accordingly, we accept the reported question. *See id.* ¶ 14.

B.     Proof of Ownership

[¶11]    The Superior Court's question arises from a single sentence in 14 M.R.S. § 6321,[4] the foreclosure by civil action statute:

> The mortgagee shall certify proof of ownership of the mortgage note and produce evidence of the mortgage note, mortgage and all assignments and endorsements of the mortgage note and mortgage.

The Legislature added this sentence to the foreclosure by civil action statute as part of comprehensive foreclosure reform in 2009.  *See* P.L. 2009, ch. 402, § 17 (effective June 15, 2009).   Section 6321, which is lengthy, is reprinted as an attachment following this opinion.

[¶12]  We interpret the meaning of a statute de novo by analyzing its plain language in the context of the whole statutory scheme.  *Fuhrmann v. Staples the Office Superstore E., Inc.*, 2012 ME 135, ¶ 23, --- A.3d ---.   If the statute's meaning is unambiguous, and not illogical or absurd, that meaning controls, and we do not look beyond its words.  *Russell v. ExpressJet Airlines, Inc.*, 2011 ME 123, ¶ 16, 32 A.3d 1030.   Only when a statute's meaning is ambiguous do we consider other evidence of legislative intent.  *Michalowski v. Bd. of Licensure in Med.*, 2012 ME 134, ¶ 24 n.6, --- A.3d ---.

---

[4]  The Superior Court referenced *Chase Home Finance LLC v. Higgins*, 2009 ME 136, ¶ 11, 985 A.2d 508, in its question.  In *Higgins*, we described this section as requiring a "mortgage holder" to submit "properly presented proof of ownership of the mortgage note and the mortgage, including all assignments and endorsements of the note and the mortgage."  *Id.*

6

[¶13]   The plain language at issue creates two requirements: that the mortgagee "certify proof of ownership of the mortgage note" and that the mortgagee "produce evidence" of various documents and transactions.  14 M.R.S. § 6321.  Our cases citing this sentence have applied only the second requirement related to evidence of ownership.  In *Wells Fargo Bank, NA v. deBree*, we vacated a summary judgment in favor of a bank when the bank "failed to supply evidence that it owns the deBrees' note and mortgage."  2012 ME 34, ¶¶ 7-11, 38 A.3d 1257.  Similarly, in *HSBC Bank USA, N.A. v. Gabay*, we vacated a summary judgment when the plaintiff failed to cite evidence satisfying the requirement in its statement of material facts.  2011 ME 101, ¶¶ 1, 12-18, 28 A.3d 1158.  In addition, we acknowledged, but did not apply, this sentence in *Mortgage Electronic Registration Systems, Inc. v. Saunders*, 2010 ME 79, ¶ 12 n.4, 2 A.3d 289.

[¶14]   The requirement in section 6321, paragraph 3 that a plaintiff "certify proof of ownership of the mortgage note" is the basis for Cloutier's contention that only the economic beneficiary of a mortgage note may sue for foreclosure. Cloutier argues that only an "owner" and not a "holder" or other entity entitled to enforce the note may bring a foreclosure action.  Title 11 M.R.S. § 3-1301 (2012)

lists who is entitled to enforce an instrument pursuant to Article 3-A of Maine's version of the Uniform Commercial Code (UCC)).[5]

[¶15]   Additionally, the first sentence in section 6321 clarifies that it is consistent with section 3-1301 of the UCC.  It provides: "After breach of condition in a mortgage of first priority, the mortgagee *or any person claiming under the mortgagee* may proceed for the purpose of foreclosure . . . ."  14 M.R.S. § 6321 (emphasis added).  This sentence, in the first paragraph, suggests that the "certify proof of ownership of the mortgage note" requirement, in the third paragraph, does not impose a standing requirement, because standing to bring a foreclosure action has been addressed in the first paragraph.  The "proof of ownership" language appears in the middle of a long paragraph concerning procedural requirements and adjoins another phrase concerning evidentiary requirements.  As between the first

---

[5]  Title 11 M.R.S. § 3-1301 (2012) provides:

"Person entitled to enforce" an instrument means:

**(1).**  The holder of the instrument;

**(2).**  A nonholder in possession of the instrument who has the rights of a holder; or

**(3).**  A person not in possession of the instrument who is entitled to enforce the instrument pursuant to section 3-1309 or 3-1418, subsection (4).

A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

An "instrument" can include a "note."  *See* 11 M.R.S. § 3-1104(5) (2012).

and third paragraphs, the first controls standing and the third addresses procedural prerequisites that an entity with standing must satisfy to maintain an action.

[¶16]  The requirement that a plaintiff "certify proof of ownership of the mortgage note" does require that a plaintiff do more than provide the evidence described in the second half of the sentence.  14 M.R.S. § 6321.  The statute does not define "ownership."  In this context, we interpret "certify proof of ownership" to require the plaintiff to identify the owner or economic beneficiary of the note and, if the plaintiff is not the owner, to indicate the basis for the plaintiff's authority to enforce the note pursuant to Article 3-A of the UCC.  *See* 11 M.R.S. § 3-1301.  We have previously connected a party's right to bring an action for foreclosure to its right to enforce pursuant to 11 M.R.S. § 3-1301.  *See Saunders*, 2010 ME 79, ¶ 12, 2 A.3d 289; *see also JPMorgan Chase Bank v. Harp*, 2011 ME 5, ¶ 9 n.3, 10 A.3d 718.

[¶17]  Cloutier argues that although Article 3-A controls the right to enforce a promissory note, section 6321 further limits Article 3-A.  If we could not harmonize section 6321 and Article 3-A, section 6321 would govern because it deals specifically with the subject of foreclosure.  *Michalowski*, 2012 ME 134, ¶ 12, --- A.3d ---.  The two statutes can be read in harmony, however, because, as discussed above, paragraph three of section 6321 does not impose a standing

requirement. In contrast, paragraph one of section 6321 can be read consistently with Article 3-A to specifically define who may enforce a promissory note.

[¶18] The parties do not dispute that Bank of America is a holder entitled to enforce the note. Bank of America currently has possession of the note, which is endorsed in blank. The definition of "holder" includes "[t]he person in possession of a negotiable instrument that is payable . . . to bearer." 11 M.R.S. § 1-1201(21)(a) (2012). A holder of an instrument is entitled to enforce it. 11 M.R.S. § 3-1301(1). The statute expressly notes, "A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument . . . ." *Id.* § 3-1301.

[¶19] Although the plain language of the statute unambiguously produces this result, we are mindful of the legislative history of this provision. It is apparent from the committee file that one of the problems brought to the Legislature's attention as it drafted the bill was the inability of some foreclosure defendants to make contact with an entity with authority to settle the case when the plaintiff is merely a servicer working on behalf of another entity. Nevertheless, it does not appear that the specific provision at issue in this case was aimed at remedying that problem.

[¶20] Some scholarly literature describes how the use of loan servicers increased the difficulty for mortgagors in distress at the time the Legislature

enacted its amendments. *See* Kathleen C. Engel & Patricia A. McCoy, *The Subprime Virus: Reckless Credit, Regulatory Failure, and Next Steps* 84-85 (2011). For example, complicated financial incentives may have pressured servicers to avoid loan modifications and push for foreclosure.[6] *See id.* at 130-32. Servicers sometimes did not have the skill to negotiate modification terms or the infrastructure to handle the volume of foreclosures. *Id.* at 130-31. These problems may have motivated the Legislature when it sought to improve the ability of foreclosure defendants to directly communicate with an entity with authority to negotiate a settlement.

[¶21] However, the plain language of the clause requiring the mortgagee to "certify proof of ownership of the mortgage note" does not link these policy goals to a rule that only the economic beneficiary of a mortgage note may sue for foreclosure. *See* 14 M.R.S. § 6321. Those goals can be satisfied if the owner or economic beneficiary of the note is identified. The plain language of the statute best supports the conclusion that the phrase "certify proof of ownership of the mortgage note" requires only that a foreclosure plaintiff identify the owner or

---

[6] The amici briefs extensively discuss these abuses and debate whether or not Freddie Mac's servicers have appropriate incentives to avoid foreclosures. We appreciate the contributions of the amici curiae, but these arguments are largely irrelevant to the narrow question of statutory interpretation before us. Even if we concluded that that statutory language was ambiguous, we would only consider the statute's underlying policy to the extent that the policy illuminated the Legislature's intent. *See Fuhrmann v. Staples the Office Superstore E., Inc.*, 2012 ME 135, ¶ 31, --- A.3d. ---. Thus, the only alleged abuses that could be relevant to our analysis are those that occurred in the industry generally and when the statute was enacted, not within Freddie Mac specifically or when the statute is being applied.

economic beneficiary and, if it is not itself the owner, prove that it has power to enforce the note. *See id.* This unambiguous meaning, which is not illogical or absurd, controls, and we do not look beyond the statute's words. *See ExpressJet Airlines, Inc.*, 2011 ME 123, ¶ 16, 32 A.3d 1030.

The entry is:

> Report accepted. Remanded for further proceedings consistent with this opinion.

**On the briefs:**

Elizabeth Papez, Esq., Winston & Strawn LLP, Washington, District of Columbia; and Corin R. Swift, Esq., and Jeff Goldman, Esq., Bingham McCutchen LLP, Portland, for Bank of America, N.A.

L. Scott Gould, Esq., Cape Elizabeth; Thomas A. Cox, Esq., Portland; and Andrea Bopp Stark, Esq., Molleur Law Office, Biddeford, for James A. Cloutier

Catherine R. Connors, Esq., John A. Aromando, Esq., and Michelle Bush, Esq., Pierce Atwood LLP, Portland, for amicus curiae Federal Home Loan Mortgage Corporation

Peter L. Murray, Esq., Murray, Plumb & Murray, Portland, for amici curiae Legal Services Center of Harvard Law School and National Consumer Law Center

**At oral argument:**

Elizabeth Papez, Esq., for Bank of America, N.A.

Thomas A. Cox, Esq., for James A. Cloutier

12

**ATTACHMENT**

Title 14 M.R.S. § 6321 (2012) (emphasis added) provides:

**Commencement of foreclosure by civil action**

After breach of condition in a mortgage of first priority, *the mortgagee or any person claiming under the mortgagee may proceed for the purpose of foreclosure by a civil action against all parties in interest* in either the Superior Court or the District Court in the division in which the mortgaged premises or any part of the mortgaged premises is located, regardless of the amount of the mortgage claim.

After breach of condition of any mortgage other than one of the first priority, the mortgagee or any person claiming under the mortgagee may proceed for the purpose of foreclosure by a civil action against all parties in interest, except for parties in interest having a superior priority to the foreclosing mortgagee, in either the Superior Court or the District Court in the division in which the mortgaged premises or any part of the mortgaged premises is located. Parties in interest having a superior priority may not be joined nor will their interests be affected by the proceedings, but the resulting sale under section 6323 is of the defendant or mortgagor's equity of redemption only. The plaintiff shall notify the priority parties in interest of the action by sending a copy of the complaint to the parties in interest by certified mail.

The foreclosure must be commenced in accordance with the Maine Rules of Civil Procedure, and the mortgagee shall within 60 days of commencing the foreclosure also record a copy of the complaint or a clerk's certificate of the filing of the complaint in each registry of deeds in which the mortgage deed is or by law ought to be recorded and such a recording thereafter constitutes record notice of commencement of foreclosure. The mortgagee shall further certify and provide evidence that all steps mandated by law to provide notice to the mortgagor pursuant to section 6111 were strictly performed. *The mortgagee shall certify proof of ownership of the mortgage note and produce evidence of the mortgage note, mortgage and all assignments and endorsements of the mortgage note and mortgage.*

The complaint must allege with specificity the plaintiff's claim by mortgage on such real estate, describe the mortgaged premises intelligibly, including the street address of the mortgaged premises, if any, which must be prominently stated on the first page of the complaint, state the book and page number of the mortgage, if any, state the existence of public utility easements, if any, that were recorded subsequent to the mortgage and prior to the commencement of the foreclosure proceeding and without mortgagee consent, state the amount due on the mortgage, state the condition broken and by reason of such breach demand a foreclosure and sale. If a clerk's certificate of the filing of the complaint is presented for recording pursuant to this section, the clerk's certificate must bear the title "Clerk's Certificate of Foreclosure" and prominently state, immediately after the title, the street address of the mortgaged premises, if any, and the book and page number of the mortgage, if any. Service of process on all parties in interest and all proceedings must be in accordance with the Maine Rules of Civil Procedure. "Parties in interest" includes mortgagors, holders of fee interest, mortgagees, lessees pursuant to recorded leases or memoranda thereof, lienors and attaching creditors all as reflected by the indices in the registry of deeds and the documents referred to therein affecting the mortgaged premises, through the time of the recording of the complaint or the clerk's certificate. Failure to join any party in interest does not invalidate the action nor any subsequent proceedings as to those joined. Failure of the mortgagee to join, as a party in interest, the holder of any public utility easement recorded subsequent to the mortgage and prior to commencement of foreclosure proceedings is deemed consent by the mortgagee to that easement. Any other party having a claim to the real estate whose claim is not recorded in the registry of deeds as of the time of recording of the copy of the complaint or the clerk's certificate need not be joined in the foreclosure action, and any such party has no claim against the real estate after completion of the foreclosure sale, except that any such party may move to intervene in the action for the purpose of being added as a party in interest at any time prior to the entry of judgment. Within 10 days of submitting the complaint for filing with the court, the mortgagee shall provide a copy of the complaint or of the clerk's certificate as submitted to the court that prominently states, immediately after the title, the street address of the mortgaged premises, if any, and the book and page number of the mortgage, if

any, to the municipal tax assessor of the municipality in which the property is located and, if the mortgaged premises is manufactured housing as defined in Title 10, section 9002, subsection 7, to the owner of any land leased by the mortgagor. The failure to provide the notice required by this section does not affect the validity of the foreclosure sale.

For purposes of this section, "public utility easements" means any easements held by public utilities, as defined in Title 35-A, section 102; sewer districts, as defined in Title 38, section 1251; or sanitary districts, as formed under Title 38, chapter 11.

The acceptance, before the expiration of the right of redemption and after the commencement of foreclosure proceedings of any mortgage of real property, of anything of value to be applied on or to the mortgage indebtedness by the mortgagee or any person holding under the mortgagee constitutes a waiver of the foreclosure unless an agreement to the contrary in writing is signed by the person from whom the payment is accepted or unless the bank returns the payment to the mortgagor within 10 days of receipt. The receipt of income from the mortgaged premises by the mortgagee or the mortgagee's assigns while in possession of the premises does not constitute a waiver of the foreclosure proceedings of the mortgage on the premises.

The mortgagee and the mortgagor may enter into an agreement to allow the mortgagor to bring the mortgage payments up to date with the foreclosure process being stayed as long as the mortgagor makes payments according to the agreement. If the mortgagor does not make payments according to the agreement, the mortgagee may, after notice to the mortgagor, resume the foreclosure process at the point at which it was stayed.

(Footnote omitted.)