MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2013 ME 60
Docket:        Cum-12-431
Argued:        May 16, 2013
Decided:       June 20, 2013

Panel:         ALEXANDER, LEVY, SILVER, <u>MEAD</u>, GORMAN, and JABAR, JJ.


U.S. BANK, NATIONAL ASSOCIATION AS TRUSTEE FOR
THE MLMI SURF TRUST SERIES 2006-BC2

v.

THEODORE W. THOMES et al.


MEAD, J.

[¶1]  U.S. Bank, N.A., appeals from a judgment entered after trial by the District Court (Portland, *Moskowitz, J.*) in favor of Theodore and Renee Thomes on the bank's complaint seeking (1) a judgment of foreclosure and sale concerning real property in Windham owned by the Thomeses; and (2) a judgment against Theodore on a theory of unjust enrichment for the amount of the note secured by the property, which the bank deemed necessary because only Renee was a party to the note and the mortgage securing the note.  We agree with the bank's contention that it was entitled to a judgment of foreclosure against Renee in light of our recent decision in *Bank of America, N.A. v. Cloutier*, 2013 ME 17, 61 A.3d 1242, and so we vacate the judgment in that regard.  In all other respects, the judgment is affirmed.

## I. BACKGROUND

[¶2]  Viewing the record in the light most favorable to its judgment, the trial court did or could have found the following facts from the evidence admitted at trial.  *See Pelletier v. Pelletier*, 2012 ME 15, ¶ 13, 36 A.3d 903.  Theodore (Ted) and Renee Thomes jointly own a home in Windham.  In May 2004, they mortgaged the property to secure a $195,225 loan.  The mortgage loan broker was David McGovern, a social acquaintance and friend of the Thomeses.  McGovern offered his services to the Thomeses and was aware that they owned the property jointly.

[¶3]  In 2005, Renee decided to refinance the property in order to make home improvements.  At that time Ted was out of work and confined to bed recovering from a serious shoulder injury.  Renee testified at trial that he was in "severe pain" and was taking "heavy narcotics" for pain; Ted described himself as "all doped up" and "overmedicat[ed]" by his doctor.  Renee testified that she might have talked to Ted about refinancing the house, but she alone made the decision to do it.

[¶4]  Renee again went to McGovern to obtain the refinancing.  She filled out a loan application listing only herself as the borrower, while stating on the application that title to the property would be held in both her name and Ted's as joint tenants.  She told McGovern that she and Ted owned the property, a fact that

she assumed he already knew from their previous loan transaction. She and McGovern signed the loan application; Ted did not. Ted had no discussions with McGovern concerning the 2005 refinancing and was not told by anyone that he needed to be involved. He did not review the closing documents, nor did Renee discuss with him why the transaction was a refinancing rather than a second mortgage. He never considered himself to be a co-borrower on the loan.

[¶5] At the closing conducted by McGovern, Renee signed a note for a $223,000 loan in her name alone and gave a mortgage in her name alone, both in favor of MortgageIT, Inc. The 2004 mortgage was paid in full, and Renee received $14,411 in cash. MortgageIT endorsed the new note to the bank, which by allonge endorsed the note in blank. At trial, a mortgage resolution associate for Bank of America, which currently services the loan, testified that U.S. Bank is the holder with physical custody of the note; the original note was admitted in evidence. The mortgage was assigned by MortgageIT's nominee to the bank, and a copy of the assignment was also admitted in evidence.

[¶6] At trial, Renee agreed that she had made no payments on the loan since 2007. The Bank of America associate testified that the amount owed was $340,290. Notice of the default was served on Renee. In August 2007, the bank filed a complaint against the Thomeses. As amended, the complaint alleged four counts, including Foreclosure and Sale (Count I); and Unjust Enrichment

4

(Count IV), seeking damages from Ted as a result of the benefit that he gained from the loan to Renee.[1]

[¶7] At the conclusion of the trial, the court ruled from the bench in favor of the Thomeses on all counts of the bank's complaint. It denied the bank's motion to amend its findings pursuant to M.R. Civ. P. 52, and this appeal followed.

## II. DISCUSSION

### A. Foreclosure

[¶8] The court entered judgment against the bank on Count I after finding that it did not present sufficient evidence to establish that it owned the note or the mortgage. The parties agree, correctly, that the resolution of this issue is controlled by our recent decision in *Cloutier*, which was handed down after this case was appealed. 2013 ME 17, 61 A.3d 1242.

[¶9] The statute governing civil foreclosures requires, *inter alia*, that "[t]he mortgagee . . . certify proof of ownership of the mortgage note and produce evidence of the mortgage note, mortgage and all assignments and endorsements of the mortgage note and mortgage." 14 M.R.S. § 6321 (2012). In *Cloutier*, we addressed the question of "the proof that is required for a party to prove 'ownership' of the mortgage note and mortgage for purposes of foreclosure," and

---

[1] The bank does not appeal from the court's judgment in favor of the Thomeses on the remaining counts of the complaint.

held that the foreclosure plaintiff must "identify the owner or economic beneficiary of the note and, if the plaintiff is not the owner, . . . indicate the basis for the plaintiff's authority to enforce the note pursuant to Article 3-A of the UCC." *Cloutier*, 2013 ME 17, ¶¶ 1, 16, 61 A.3d 1242. In other words, "the phrase 'certify proof of ownership of the mortgage note' requires only that a foreclosure plaintiff identify the owner or economic beneficiary and, if it is not itself the owner, prove that it has power to enforce the note." *Id.* ¶ 21.

[¶10] The trial court, acting without the guidance of *Cloutier*, required the bank to prove more than was necessary to satisfy the statute. The bank's initial burden was not to prove that it owned the note, but rather to identify the owner or economic beneficiary of the note, which it did both in the complaint and in the evidence it presented. First, the caption of the amended complaint states that the bank acted "as Trustee for the MLMI SURF Trust Series 2006-BC2." Second, that same relationship is specified on (1) the first endorsement of the note from MortgageIT to the bank, (2) the allonge executed by the bank endorsing the note in blank, and (3) the assignment of the mortgage from MortgageIT's nominee to the bank, all of which were admitted in evidence. Accordingly, the requirement that the bank identify the owner or economic beneficiary of the note was satisfied.

[¶11] Because it was not itself the owner of the note, the bank was also required to prove that it was empowered to enforce the note, *see id.*, a requirement

the bank met when it admitted in evidence the original note endorsed in blank and elicited testimony that it had physical possession of the note. In *Cloutier* we observed that the party seeking to enforce the note "currently has possession of the note, which is endorsed in blank. The definition of 'holder' includes '[t]he person in possession of a negotiable instrument that is payable . . . to bearer.' A holder of an instrument is entitled to enforce it." *Id.* ¶ 18 (quoting 11 M.R.S. § 1-1201(21)(a) (2012)) (citation omitted). That is precisely the situation presented here.

[¶12] Because the bank identified the owner or economic beneficiary of the note and proved that it had the power to enforce the note, the requirements of 14 M.R.S. § 6321 as construed by *Cloutier* were satisfied, and the bank was entitled to a judgment of foreclosure against Renee on Count I.

B. Unjust Enrichment

[¶13] Count IV of the amended complaint alleges that Ted was unjustly enriched when Renee used the proceeds of the mortgage loan taken solely in her name to pay off the couple's existing joint mortgage debt, which the bank asserts constituted a benefit conferred on Ted that he accepted or retained without paying for it.

[¶14] "An unjust enrichment claim is brought to recover the value of the benefit retained when there is no contractual relationship, but when, on the grounds

of fairness and justice, the law compels performance of a legal and moral duty to pay." *Estate of Miller*, 2008 ME 176, ¶ 29, 960 A.2d 1140 (quotation marks omitted). The claim is established by proving that "(1) the claimant conferred a benefit on the receiving party, (2) the receiving party had appreciation or knowledge of the benefit, and (3) acceptance or retention of the benefit was under circumstances that make it inequitable for [the receiving party] to retain the benefit without payment of its value." *Estate of Anderson*, 2010 ME 10, ¶ 10, 988 A.2d 977 (quotation marks omitted). We review the trial court's findings concerning the bank's unjust enrichment claim for clear error. *Id.*

[¶15] Here, the court found that "[t]he evidence establishes that Mr. Thomes didn't know the nature of the transaction. He was at home and sick. He assumed that the transaction was going to be a transaction that had to do with a home equity loan to add insulation in the home." Those findings are not clearly erroneous because they are supported by competent evidence in the record in the form of the Thomeses' testimony. *See Pelletier*, 2012 ME 15, ¶ 13, 36 A.3d 903. The bank asserts that the evidence dictates a different conclusion, but because "[d]eterminations of witness credibility are uniquely within the fact-finder's authority," we "examine the record, and the reasonable inferences that may be drawn from the record, in the light most favorable to the trial court's judgment." *Id.* (quotation marks omitted).

8

[¶16]  Once the court's factual findings are accepted, the bank's unjust enrichment claim fails because it cannot establish that Ted "had appreciation or knowledge of the benefit." *Estate of Anderson*, 2010 ME 10, ¶ 10, 988 A.2d 977 (quotation marks omitted).  Furthermore, the court was justified in finding that the third element of the bank's unjust enrichment claim, that "acceptance or retention of the benefit was under circumstances that make it inequitable for [Ted] to retain the benefit without payment of its value," *id.* (quotation marks omitted), was not satisfied.  "The most significant element of the doctrine of unjust enrichment is whether the enrichment of the defendant is *unjust*."  *Howard & Bowie, P.A. v. Collins*, 2000 ME 148, ¶ 14, 759 A.2d 707 (alterations omitted).

[¶17]  The court determined that MortgageIT made the loan solely to Renee with its eyes open, finding that "[t]he evidence . . . establishes that MortgageIT knew that Mr. Thomes owned the real estate and the deal was consummated with only Ms. Thomes listed as the mortgagor."  That finding is supported by competent evidence in the record: (1) Renee completed the loan application as the sole borrower, listing Ted on the application as a joint titleholder and joint tenant; (2) the mortgage broker used by MortgageIT also brokered the Thomeses' earlier mortgage where Ted was a co-mortgagor; (3) the commitment to issue title insurance and the title insurance policy itself recite that title to the insured property is "vested in: Renee Thomes and Theodore W. Thomes, by virtue of a Warranty

Deed from Theodore W. Thomes"; and (4) the commitment to issue title insurance identifies the mortgage to be retired, an outstanding property tax lien, and an outstanding materialman's lien as debts owed by both Renee and Ted.

[¶18] The court did not clearly err in finding that Ted did not know about or appreciate the benefit that the bank asserts was conferred on him, or in finding that MortgageIT made the loan to Renee knowing that Ted held an ownership interest in the property securing the loan. Accordingly, the court did not err in entering judgment against the bank on its unjust enrichment claim.

The entry is:

> Judgment as to Count I vacated; remanded for further proceedings consistent with this opinion. In all other respects, judgment affirmed.

---

**On the briefs:**

Elizabeth Papez, Esq., Winston & Strawn, LLP, Washington, District of Columbia, Patrick D. Thornton, Esq., Monaghan Leahy, LLP, Portland, and Corin R. Swift, Esq., and Jeff Goldman, Esq., Bingham McCutchen LLP, Portland, for appellant U.S. Bank, N.A.

S. James Levis, Jr., Esq., Law Office of S. James Levis, Jr., Kennebunk, for appellees Theodore W. and Renee Thomes

**At oral argument:**

Elizabeth Papez, Esq., for appellant U.S. Bank, N.A.

S. James Levis, Jr., Esq., for appellees Theodore W. and Renee Thomes

Portland District Court docket number RE-2007-241
FOR CLERK REFERENCE ONLY