STATE OF MAINE                                SUPERIOR COURT
CUMBERLAND, ss                                CIVIL ACTION
                                              DOCKET NO. CV-16-189 ✓


GARY CURTIS,

        Plaintiff

v.                                            JUDGMENT

MEGAN STOVER,

        Defendant

REC'D CUMB CLERKS OF
FEB 28 '18 PM 1:49

Jury-waived trial was held on December 4, 2018. Both parties appeared and were represented by counsel.

In his amended complaint, plaintiff alleges four causes of action: in count I, unjust enrichment; in count II, conversion; in count III, money had and received; and in count IV, fraud, misrepresentation, and deceit. At the close of plaintiff's evidence, defendant moved for judgment as a matter of law on all counts. M.R. Civ. P. 50(d). The court granted the motion on count IV, fraud, misrepresentation, and deceit. The court took the motion under advisement on the remaining three counts. For the following reasons, judgment as a matter of law is entered on counts I, II, and III in favor of defendant.

FACTS

Defendant was married to Dominique Stover in June 2008. They had three children, who are now eleven, seven, and five years old. In 2010, they bought a home in South Portland. They sold that house on August 17, 2012 and bought a four-unit home in Westbrook on the same date. (Exs. 4-5.) Defendant was a stay-at-home mother from 2010 to 2013. They separated in June

1

2014 and reconciled in late 2014 or early 2015. Mr. Stover died from a drug overdose in November 2015. His estate was valued at negative $10,000.00.

Plaintiff and Mr. Stover were friends. Mr. Stover was a carpenter and defendant was his office manager. Mr. Stover proposed to plaintiff a plan to buy a house, repair it, and sell it for a profit. Plaintiff loaned Mr. Stover $5,000.00 to research potential properties to buy. (Ex. 1.) Plaintiff met Mr. Stover at his home and was presented with a contract, which Mr. Stover had prepared. (Ex. 2.) Mr. Stover was not a good businessman so defendant assisted him by typing estimates or contracts that he prepared. Plaintiff and Mr. Stover signed the contract and plaintiff wrote and gave a check to Mr. Stover for $60,000.00. (Ex. 3.) At trial, plaintiff agreed that defendant did not sign the contract, made no promises to plaintiff, and was not involved in the plan to buy, repair, and sell a house.

Mr. Stover called plaintiff and stated Mr. Stover had purchased a multi-family house in Westbrook, Maine. After the house was renovated, the Stovers moved in and rented the other units. Mr. Stover stated he would eventually sell the house but never did.

After plaintiff received only $1,440.00 in cash from Mr. Stover, plaintiff became worried and filed a lawsuit against Mr. Stover in 2013. Plaintiff made no allegations against defendant. (Ex. 9; see also Exs. 12, 15, 36, 45.) In 2014, plaintiff prevailed in the lawsuit and was awarded a judgment against Mr. Stover in the amount of $63,560.00, interest, costs, and 50% of the net proceeds from the sale of the Westbrook property. (Ex. 15.) Plaintiff received total payments of $600.00 from Mr. Stover.

In January 2016, plaintiff saw a sign in front of the Westbrook property that indicated the house was under contract. Plaintiff called his attorney, who stated that the house had been sold in January 2016 and Mr. Stover had died. Plaintiff filed a petition against Mr. Stover's estate in

2

Probate Court. Plaintiff made no allegations against defendant. The petition was not allowed because the estate was insolvent and defendant had received nothing from the sale of the Westbrook property. (Ex. 24.) Defendant's father forgave a secured loan on the property so it could be sold and he paid Mr. Stover's funeral expenses.[1] (Ex. 11.) The proceeds from the sale of the Westbrook property were paid to defendant's father. (Exs. 17-18.)

Defendant's name was not on Mr. Stover's Bank of America business or personal checking accounts. (Exs. 51-52.) They did have a joint account at Bangor Savings Bank. During trial, evidence of deposits to, and expenditures for household expenses from, bank accounts was presented. Mr. Stover managed the family's finances through an app on his phone. He gave defendant money to spend and, on occasion, a debit card to use for family expenses. He specified how the money was to be spent, generally for food and bills. Defendant went to the food pantry multiple times for food for the family. She assumed the money in the accounts that was given to her for expenses was from Mr. Stover's employment income because he went to work every day and they filed tax returns. Defendant was not involved in the family finances and first reviewed the banking records at her deposition on February 3, 2017.

Defendant knew that plaintiff loaned Mr. Stover $65,000.00 to buy, repair, and sell a house. She did not notice that she was given additional money for expenses after January 6, 2012. She does not know what Mr. Stover did with plaintiff's money. No money was given to her directly from plaintiff's money, she was not involved in the transaction, and did not promise to repay the money to plaintiff. After Mr. Stover's death, defendant learned for the first time about his lifestyle, including the extent of his drug use and that he had a girlfriend and a second family.

---

[1] This testimony was offered by Gary Crosby during defendant's case but also appears in exhibit 24, offered during plaintiff's case.

3

## DISCUSSION

### Rule 50(d)

When considering defendant's Rule 50(d) motion, "the court can weigh the evidence and assess credibility." Bartlett v. Lindahl, 560 A.2d 563, 564 n.1 (Me. 1989). Defendant's testimony that she did not know what Mr. Stover did with plaintiff's money and she assumed the money Mr. Stover gave her was from his business income was credible. Plaintiff's evidence is insufficient to prove the elements of his claims.

### Count I: Unjust Enrichment

In order to establish a claim for unjust enrichment, plaintiff must show: "(1) the claimant conferred a benefit on the receiving party; (2) the receiving party had appreciation or knowledge of the benefit; and (3) acceptance or retention of the benefit was under circumstances that make it inequitable for [the receiving party] to retain the benefit without payment of its value." United States Bank v. Thomes, 2013 ME 60, ¶ 14, 69 A.3d 411 (quoting Estate of Anderson, 2010 ME 10, ¶ 10, 988 A.2d 977); A.F.A.B., Inc. v. Town of Old Orchard Beach, 639 A.2d 103, 105 & n.3 (Me. 1994). Plaintiff has not proved how plaintiff's money was used. If any of plaintiff's money was given to defendant for household expenses, she had no appreciation or knowledge of that fact. Equity would not be served by holding defendant responsible for the loan from plaintiff to Mr. Stover.

### Count II: Money Had and Received

An action for "assumpsit of money had and received" is an equitable action and may be maintained "when one person has in his possession money which in equity and good conscience belongs to another, the law will create an implied promise upon the part of such person to pay the same to him to whom it belongs." Greenlaw v. Rodick, 185 A.2d 895, 898 (Me. 1962) (quoting

4

Webb v. Brannen, 128 Me. 287, 291, 147 A. 208); see Rosenthal v. Rosenthal, 543 A.2d 348, 355-56 (Me. 1988); Harmony Homes Corp. v. Cragg, 390 A.2d 1033, 1035 (Me. 1978). Plaintiff has not proved defendant had in her possession plaintiff's money. Again, considering the circumstances of this case, equity does not require holding defendant responsible for the loan from plaintiff to Mr. Stover.

Count III: Conversion

In order to establish a claim for conversion, plaintiff must show: "(1) the person claiming that his or her property was converted has a property interest in the property; (2) the person had the right to possession at the time of the alleged conversion; and (3) the party with the right to possession made a demand for its return that was denied by the holder." Estate of Barron v. Shapiro & Morley, LLC, 2017 ME 51, ¶ 14, 157 A.3d 769. Conversion requires an intent to exercise dominion or control over another's property that seriously interferes with the owner's rights. See Northeast Bank of Lewiston & Auburn v. Murphy, 512 A.2d 344, 347 (Me. 1986); see also Lougee Conservancy v. CitiMortgage, Inc., 2012 ME 103, ¶ 22, 48 A.3d 774 (court can consider the actor's good faith in determining conversion). Defendant had no intent to exercise dominion or control over plaintiff's money.

The entry is

> Defendant's Motion for Judgment as a Matter of Law on Counts I, II, and III is GRANTED. Judgment is entered in favor of Defendant Megan Stover and against Plaintiff Gary Curtis on Plaintiff's Amended Complaint.

Date: February 28, 2018

Nancy Mills
Justice, Superior Court

5

STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-16-189

GARY CURTIS,

        Plaintiff

v.

MEGAN STOVER,

        Defendant

STATE OF MAINE
Cumberland, ss. Clerk's Office

AUG 1 0 2016

RECEIVED

ORDER ON DEFENDANT'S
MOTION TO DISMISS

Before the court is defendant's motion to dismiss plaintiff's complaint for unjust enrichment and conversion. Attached to the motion are 15 exhibits. The exhibits are not all official public documents, documents that are central to plaintiff's claims, or documents that are referred to in the complaint, which may be considered on a motion to dismiss. See Moody v. State Liquor & Lottery Comm'n, 2004 ME 20, ¶¶ 8-10, 843 A.2d 43.

Although defendant included a statement of material facts in her motion, plaintiff responded in opposition with a memorandum of law only. Accordingly, the court does not have the procedural benefits provided through a motion for summary judgment. See 2 Harvey & Merritt, Maine Civil Practice § 12:13 at 429 (3d, 2015-2016 ed.) ("It is advisable . . . for the lawyer to make a motion for summary judgment labeled as such, where he knows that matter outside the pleadings will be needed to sustain his position.").

Defendant argues, among other things, that plaintiff's complaint fails to state a claim upon which relief can be granted. (Def.'s Mot. Dismiss 8); M.R. Civ. P. 12(b)(6). Accordingly, unless the matters outside the pleading are excluded by the court,

1

defendant's motion to dismiss shall be treated as a motion for summary judgment. <u>See</u> <u>Moody</u>, 2004 ME 20, ¶ 8, 843 A.2d 43; M.R. Civ. P. 12(b).

Plaintiff will have 21 days from the date of this order to respond to defendant's statement of material facts not in dispute and file any additional memorandum. <u>Id.</u>; M.R. Civ. P. 56(h)(2) & 7(c)(2). Defendant will respond to plaintiff's filings pursuant to the rules. M.R. Civ. P. 56(h)(3) & 7(e).

The entry is

> Defendant's Motion to Dismiss is converted to a Motion for Summary Judgment. Plaintiff will have 21 days from the date of this order to respond to Defendant's Motion for Summary Judgment. Defendant will respond to Plaintiff's filings pursuant to the rules.

Date: August 9, 2016

Nancy Mills
Justice, Superior Court

2