STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-2017-037

JOHN R. LUONGO,

      Plaintiff,

v.

MICHAEL A. LUONGO, JR.,

      Defendant.

)
)
)
)
)
)
)
)
)
)
)

**ORDER**

This matter is before the Court on Plaintiff John R. Luongo's ("John") Motion for Findings of Fact and Conclusions of Law. Defendant Michael A. Luongo, Jr. ("Michael") opposes John's motion.

Trial was held on June 6 and 7, 2022. At the time of trial, three counts of John's Second Amended Complaint remained: Count II, intentional misrepresentation; Count IV, negligent misrepresentation; and Count V, unjust enrichment.[1] By Order dated September 23, 2022, and docketed September 28, 2022, the Court concluded that insufficient evidence was presented to find in favor of John on each count of his Second Amended Complaint.[2]

On October 3, 2022, John moved pursuant to Maine Rules of Civil Procedure 52(a) and 52(b) for findings of fact and conclusions of law regarding Counts II, IV, and V of the Second Amended Complaint. M.R. Civ. P. 52(a) provides:

> In all actions tried upon the facts without a jury or with an advisory jury, the Superior Court justice . . . shall, upon the request of a party made as a motion within 7 days after the statement of the decision in open court, or the entry of the decision or judgment on the docket, whichever comes

---

[1] Counts I and III were dismissed prior to trial.

[2] Count II, conversion, of Michael's First Amended Counterclaim also remained pending at the time of trial. Following hearing, the parties agreed to a division of some of the personal property in dispute. The Court divided the remaining personal property after receipt of appraisals in its September 28th Order. The Court does not herein make findings of fact and conclusions of law regarding Count II of the First Amended Counterclaim because no party has so requested.

Entered on the Docket: 1/10/2023

REC'D CUMB CLERKS OFC
JAN 10 '23 AM8:30

first . . . find the facts specially and state separately its conclusions of law.

Preliminarily, the Court finds that the motion was timely filed. The Court's Order ruling on Counts II, IV, and V was docketed on September 28, 2022.[3] The pending motion was filed October 3, 2022, or five calendar days after entry of the decision on the docket.

Although John proposes twenty-three findings of fact, many of the proposed findings do not comport with the Court's view of the facts as established at trial. The Court declines to adopt those findings wholesale.

Pursuant to M.R. Civ. P. 52(a), the Court makes the following findings of fact and conclusions of law regarding Counts II, IV, and V of the Second Amended Complaint.

## I. Findings of Fact

Michael and John are the sons of Marie Jacobson ("Marie"). On December 3, 2014, Marie passed away at her home in Gray, Maine. John and Michael were present at the time of her passing, as were several other members of the family, including Jennifer Clowe ("Jennifer") and Laura Schroeder ("Laura"). Jennifer and Laura are the daughters of Marie's daughter, Susan, who predeceased Marie.

Marie's home in Gray was located next door to John's home. In the years preceding her death, John and his wife cared for Marie and assisted her with cooking and shopping.

Marie maintained an account at Cumberland County Federal Credit Union ("the CCFCU Account"). Marie added John to her CCFCU Account as a joint owner with right of survivorship. John and Marie signed several documents to effect this change.

The terms of Marie's Will directed that her estate pour over into the Marie A. L. Jacobson Trust, dated August 8, 1983 ("the Trust"). Michael and John are co-executors of

---

[3] As reflected in the Court's September 28th Order, the parties had notice of the Court's judgment that there was insufficient evidence of Plaintiff's claims as of the conclusion of the hearing on June 7, 2022. The Court did not, however, announce this decision in open court at that time.

Marie's estate and co-trustees of the Trust.

On the evening of Marie's death, Michael initiated a conversation with John about Marie's finances. Michael asked John whether there were funds accessible to pay the property taxes on Marie's house and other expenses. John told Michael about the CCFCU Account, of which Michael was not previously aware. At the time, the CCFCU Account contained roughly $200,000. John and Michael also discussed the Trust. Michael mentioned that they should meet with Charles Sullivan, the "family attorney," to discuss what needed to be done about the Trust and Marie's estate. John expressed to Michael that he intended to write checks to each of them from the CCFCU Account.

Michael returned to Massachusetts that night, December 3. On December 4, 2014, Michael called Attorney Sullivan. Michael asked several questions about the Trust, including whether the CCFCU Account was part of the Trust. Attorney Sullivan told him that the joint account was, after Marie's death, John's personal property. Michael called John that day and recounted his conversation with Attorney Sullivan, including Attorney Sullivan's statement regarding John's ownership of the CCFCU Account.

On December 8, Michael emailed Attorney Sullivan with a list of questions about the Trust, Marie's estate, and gift tax. The email referenced Michael's conversation with Attorney Sullivan on December 4. Michael asked about gift tax because John and Michael were considering splitting the money in the CCFCU Account between the two of them. Michael was concerned that if John wrote a check for more than $14,000, then there might be gift tax issues for John or the payee. Michael contemporaneously mailed a copy of the email to John, who had told Michael that he did not use email.

On December 12, John called Michael. John mentioned that he planned to write checks for $30,000 each to Laura and Jennifer from the CCFCU Account. Michael advised John that they should wait until they meet with Attorney Sullivan to review the Trust

and its amendments. Michael was aware that Marie may have considered amending the Trust to increase the amount of the bequests to Laura and Jennifer, but he was not certain that Marie had, in fact, done so.

On December 15, Michael met John at Marie's house in Gray. John produced the checkbook for the CCFCU Account and told Michael that he wanted to divide up the money in the CCFCU Account. Michael calculated that if John wrote four checks for $14,000 and two checks for $7,000 each to members of John's own family and five checks to members of Michael's family for $14,000 each, that would dispose of $140,000 from the CCFCU Account. John asked Michael to fill out the names of the payee and the amount of each of the eleven checks, which Michael did.

When Michael asked what date he should write on the checks, John suggested that they backdate the checks to December 3, 2014, the date of Marie's death. John wanted the checks to appear to be a final gift from Marie. John made a statement to Michael to the effect of: "I could keep all of this." Then John signed each of the checks. Michael left Gray that day with the checks for his family.[4]

John transferred $140,000 from the CCFCU savings account to the CCFCU checking account the next day, December 16. Michael and his wife endorsed and cashed their checks on December 17.

On December 16, Michael contacted Attorney Sullivan to arrange a meeting. Attorney Sullivan said that he was available the following afternoon, December 17. Before confirming the meeting, Michael called John to ask if John would be able to attend. John did not think it was necessary for him to attend. He told Michael that he would not

---

[4] At the same time, Michael wrote checks for $12,500 to himself, his wife, John, and John's wife. Michael dated the checks January 2, 2015, to avoid triggering gift tax for the 2014 calendar year. The amount of the checks was calculated to distribute the remainder of the CCFCU Account. John, however, never transferred funds from the CCFCU savings account to fund these checks, so these checks are not in issue.

attend, but that he expected Michael to report back to him about the results of the meeting.

Michael met with Attorney Sullivan on December 17. They discussed the questions Michael had emailed to him the previous week, among other topics. Attorney Sullivan informed Michael that Marie had not amended the Trust to increase Jennifer and Laura's bequests.

On his commute home, Michael called John to report back about the meeting. Michael specifically told John that Attorney Sullivan confirmed that the money in the CCFCU Account was John's personal property upon Marie's death. Michael neglected to immediately mention what Attorney Sullivan had said about Jennifer and Laura's bequests, but he did eventually relay this information when Michael visited Gray on December 20.

John testified that on or before December 15, 2014, Michael told John that, according to Attorney Sullivan, the money in the CCFCU account belonged in the Trust. The Court does not credit this testimony. John also testified at trial that as of December 15, he was unaware of the implications of his joint ownership of the CCFCU Account, including the right of survivorship. The Court does not credit this testimony.

In the Court's view, John, who was devastated by his mother's passing, wanted to divide the money in the CCFCU Account among the family as a gift. He wanted the money to appear to be a final gift from Marie. The Court does not credit John's testimony to the contrary.

II.    **Conclusions of Law**

   A. **Count II: Fraudulent Misrepresentation**

   To establish a claim of fraudulent misrepresentation, the following must be shown:

(1) . . . a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act or to refrain from acting in reliance on it, and (5) the other person justifiably relies on the representation as true and acts upon it to the damage of the plaintiff.

*Cianchette v. Cianchette*, 2019 ME 87, ¶ 20, 209 A.3d 745 (quoting *Drilling & Blasting Rock Specialists, Inc. v. Rheaume*, 2016 ME 131, ¶ 17, 147 A.3d 824).

Credible evidence shows that Michael did not make any false representation of material fact to John to induce him to sign the checks from the CCFCU Account. Rather, the evidence shows that John, devastated by his mother's passing, intended to make gifts from the CCFCU Account to Michael and Michael's side of the family—as well as to his own children and grandchildren—in the immediate aftermath of Marie's death. Moreover, the evidence shows that John was aware of his joint ownership of the CCFCU Account with Marie during Marie's life, and of the implications of joint ownership with right of survivorship. John has not met his burden of proof on Count II.

## B. Count IV: Negligent Misrepresentation

Maine has adopted the Restatement (Second) of Torts formulation of negligent misrepresentation:

One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*St. Louis v. Wilkinson L. Offs., P.C.*, 2012 ME 116, ¶ 18, 55 A.3d 443 (quoting *Chapman v. Rideout*, 568 A.2d 829, 830 (Me. 1990)).

As discussed above, the evidence does not show that Michael made a false representation to John, intentionally or negligently, before John signed the checks from the CCFCU Account. Accordingly, John has not met his burden on Count IV.

## C. Count V: Unjust Enrichment

An unjust enrichment claim is established by proving that "(1) the claimant conferred a benefit on the receiving party, (2) the receiving party had appreciation or knowledge of the benefit, and (3) acceptance or retention of the benefit was under circumstances that make it inequitable for [the receiving party] to retain the benefit without payment of its value." *U.S. Bank, N.A. v. Thomes*, 2013 ME 60, ¶ 14, 69 A.3d 411 (quoting *Est. of Anderson*, 2010 ME 10, ¶ 10, 988 A.2d 977 (alteration in original)).

Credible evidence showed that John intended to give the money from the CCFCU Account as a gift and that he was aware of his ownership of the CCFCU Account upon Marie's death. Although John may now regret making the gift, equity does not demand the return of money that was intended to be an unconditional gift. John has not met his burden on Count V.

## III. Conclusion

The Court enters its findings of fact and conclusions of law on Counts II, IV, and V of the Second Amended Complaint as set forth above.

The entry is:

Plaintiff John R. Luongo's Motion for Findings of Fact and Conclusions of Law is GRANTED IN PART. The Court declines to adopt Plaintiff's proposed findings of fact. The Court enters findings of fact and conclusions of law on Counts II, IV, and V of Plaintiff's Second Amended Complaint as set forth in this Order.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: __1/9/2023__

_____
MaryGay Kennedy, Justice
Maine Superior Court